THE NATIONAL BANK OF COMMERCE IN ST. LOUIS,
MISSOURI, Appellant, v. ALEXANDER
FITZE et al., Respondents.

**St. Louis Court of Appeals, November 1, 1898.**

1. **Negotiable Promissory Note:** KNOWLEDGE OF CASHIER OF
AGREEMENT TO RENEW: NOTICE. Knowledge of the cashier of a bank,
obtained by reason of his interest and connection with other parties,
but not obtained in the performance of any duty he owed to the bank
is not notice to the bank.

2. ———: PRACTICE, TRIAL. It was not error to refuse to submit the
question of notice to the jury.

3. ———: EVIDENCE. The court did not err in rejecting evidence of
notice to the cashier of the bank obtained in his private capacity and
not as an officer of the bank.

4. **Declarations or Admissions of the Cashier:** EVIDENCE.
Declarations or admissions of the cashier of the bank as to what he
knew of the note when it was discounted were not admissible against
the bank.

*Appeal from the St. Louis City Circuit Court.*—HON.
JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED *(with directions).*

ALBERT N. EDWARDS for appellant.

The direction to the jury to find a verdict for plain-
tiff was right. Where the allegations of the petition
are admitted, and the evidence offered by defendants
does not constitute a defense, it is the duty of the court
to direct a verdict for plaintiff. Gregory v. McCormick,
120 Mo. 657. The court did not err in excluding the
evidence tendered by defendants. Defendants' tender
of evidence was limited to notice given to plaintiff's
cashier after plaintiff had purchased and paid for the

original note. No subsequent notice can affect the rights of a holder for value who purchased before maturity. Hagerman v. Sutton, 91 Mo. 519 (532). If on the evidence introduced, supplemented by that offered by defendants and excluded, the verdict is for the right party, it will not be disturbed. Stoker v. Burns, 132 Mo. 214 (222). Where the action of the court is correct in its rulings it is entirely immaterial whether it was influenced by sound or erroneous considerations. Green v. St. Louis, 106 Mo. 454 (458). Consequently it is immaterial whether the circuit court was right or wrong in his reasons for rejecting the evidence tendered. The written agreement relied on by defendants as their defense would afford no defense as against plaintiff even though notice thereof had been given plaintiff before negotiating the note. Unless otherwise expressed, an agreement to renew means only one renewal unless otherwise expressed. Tiedeman on Commercial Paper, sec. 43; Innes v. Munro, 1 Exct. 473. A collateral written agreement that a negotiable promissory note is not to be paid in the event of the nonperformance of an executory contract is void against a *bona fide* holder who purchased for value before maturity, even though with actual notice of the same. To affect his rights it must be shown that the executory contract was broken when he acquired the note and that he had actual notice of the breach. Jennings v. Todd, 118 Mo. 296. There was no evidence tending to show plaintiff knew anything of the written agreement when it acquired the four months' note. There was no evidence tending to show that plaintiff's cashier in his private capacity as president of the realty company knew of this agreement, and had there been, knowledge acquired by him in this private capacity and beyond the range of his official duties could not be imputed to plaintiff. State Savings Ass'n v. Printing Co., 25 Mo. App. 643;

Benton v. Bank, 122 Mo. 332 (339). On appeal from an order erroneously granting a new trial, if the trial court is not sustained "the judgment can be entered on the original verdict and expenses and delay of a new trial be obviated." Ess v. Griffith, 128 Mo. 50 (59).

JOHNSON, HOUTS & MARLATT for respondents Fitze & Loler.

The written agreement to renew was not repugnant to negotiable character of the note, and is enforcible against an indorsee with notice. Jennings v. Todd, 118 Mo. 296–304; Daniel's Negotiable Instruments [4 Ed.], sec. 156. The agreement to renew was for such successive renewals as delay in erection of the building might make necessary. The written agreement, relied upon by defendants, provides by its terms and context for such successive renewals. The whole context, including recitals, must be considered in endeavoring to collect the intention of the parties, although the immediate object of the inquiry be the meaning of an isolated clause. Renshaw v. Ins. Co., 104 Mo. 595–604; Johnson Co. v. Wood, 84 Mo. 489; Belch v. Miller, 32 Mo. App. 387–396. Notice of the agreement to renew, given to the cashier, attached to the bank, despite an adverse interest on his part, because in this transaction the cashier actively and solely represented the bank. Bank v. Davis, 2 Hill (N. Y.), 451; Holden v. Bank, 72 N. Y. 286, 293; Bank v. Blake, 60 Fed. Rep. 78; Bank v. Irons, 8 Fed. Rep. 1; Bank v. Cushman, 121 Mass. 490; Loving v. Brodie, 134 Mass. 453; Atlantic Mills v. Orchard Mills, 147 Mass. 268. Where questions of fact are involved, the granting or refusing of new trials, rests peculiarly within the discretion of the trial judge, and unless it is manifest that

he has abused his discretion, or that injustice has been done, his ruling will not be interfered with. Reed v. Ins. Co., 58 Mo. 429–430; Bank v. Armstrong, 92 Mo. 265; Langdon v. Kelly, 51 Mo. App. 572–576; McCullough v. Ins. Co., 113 Mo. 606–619; Ensor v. Smith, 57 Mo. App. 584–588; Hewitt v. Steele, 118 Mo. 463–476; Powell v. Railway, 59 Mo. App. 335. The presumption of correct ruling is even stronger where a new trial is granted than where one is refused. Ensor v. Smith, 57 Mo. App. 584–588; Shepard v. Brenton, 15 Iowa, 91. The evidence excluded being admitted, there was ample evidence to entitle the defendants to have the jury pass upon the question of notice to the bank through its cashier, received when the note was first discounted. Where facts are disputed or the credibility of witnesses is drawn in question or inferences are to be drawn from facts proven, the case should go to the jury. Kelly v. Railway, 70 Mo. 604; Richey v. Burnes, 83 Mo. 362–365; Berry v. Railway, 124 Mo. 223, 224, 225; Holliday v. Jones, 59 Mo. 482.

BLAND, J.—This suit was on a promissory note in words and figures as follows:

"ST. LOUIS, November 22, 1897.

"$1,500.

"Thirty days after date, for value received, we promise to pay to the order of J. A. Parker, secretary, fifteen hundred $\frac{00}{100}$ dollars, payable at The National Bank of Commerce, in St. Louis, with interest from maturity at the rate of eight per cent per annum.

"FITZE & LOLER."

Indorsed on back:

"J. A. PARKER, Sec'y.

"HOLLAND BUILDING CO., J. A. PARKER, Sec'y.

"J. A. PARKER."

The original, of which the note in suit is a renewal, was dated July 19, 1897, and this was a substituted note for one made July 12, 1897, payable to Thomas Barlow. Contemporaneous with the execution of the original note, the following collateral contract was entered into by the real parties to the note:

"July 12, 1897.

"*Fitze & Loler:*

"GENTLEMEN:—It is the understanding in reference to note for $1,500, given this date, that in case the new building at Seventh and Olive streets is not built, said note is not to be paid, and if building is delayed note is to be extended.

"(Signed) J. A. PARKER,
"Secretary Seventh and Olive Syndicate."

The giving of the note was in part performance of a contract entered into by the parties on July 10, 1897, which reads as follows:

"THIS AGREEMENT, entered into on this 10th day of July, 1897, by and between Fitze & Loler and J. A. Parker, Secretary for the Seventh and Olive Syndicate, witnesseth:

"That for and in consideration of the subscription by said Fitze & Loler for $8,000 of the 7 per cent preferred stock of the Seventh and Olive Building Company, and payment therefor, the said Seventh and Olive Syndicate, by J. A. Parker, secretary, hereby agrees to give said Fitze & Loler the contract for the marble and tile work on the Seventh and Olive Building; price to be charged by said Fitze & Loler for such work not to exceed the average bids received from first-class competing concerns in the same line of business.

"Three others to bid in addition to said Fitze & Loler; such bids to be made to the architect of the

company in good faith and the fact of said Fitze & Loler's subscription not to be made known to them.

"It is the understanding that there shall not be exceeding $650,000 of first mortgage bonds, $250,000 of second mortgage bonds, and $200,000 preferred stock issued by said company. All such issues of bonds and stock to be used for the erection of building and carrying charges of property.

"The said Fitze & Loler hereby subscribe for said $8,000 of stock; payable $500 cash, $1,500 by note at four months, and $2,000 by note given later; $4,000 of amount to be paid from contract as payments are made to them.

"It is expressly agreed that this subscription shall be void unless the enterprise goes ahead.

"In witness whereof the said Fitze & Loler and J. A. Parker, have hereunto set their hands and seals.

"(Signed) FITZE & LOLER,

"J. A. PARKER,

"Secretary Seventh and Olive Syndicate."

The circumstances leading up to the execution of the note and contract briefly stated are as follows: The Holland Building Company (a corporation), was the owner of a leasehold interest on the corner of Seventh and Olive streets in the city of St. Louis. A syndicate known as the Seventh and Olive Syndicate was formed by the Holland Building Company, J. A. Parker and others, for the purpose of erecting a building on the leased premises on corner of Seventh and Olive streets. J. A. Parker was made secretary of this syndicate (unincorporated); the lease was transferred by the Holland Building Company to the syndicate, which for a time paid the rental $31,000 per annum. Becoming embarrassed for lack of funds the Seventh Street Realty Company was incorporated, for the purpose of carrying the lease and otherwise assisting the syndicate

in its contemplated enterprise. The realty company carried the lease for a time, and then released to a trustee for the syndicate at a rental of $34,500 per annum. The syndicate undertook to contract for the erection of its building by making subcontracts with sundry contractors for the various parts of the building, and made the contract, *supra*, with Fitze & Loler in pursuance of this scheme. The scheme was not successful, and up to the date of trial nothing had been done toward the erection of the building, but the promoters were making efforts in other directions to secure a contract for its erection, with fair prospects of success. On the day the note of July 19 was given J. A. Parker presented it at the Bank of Commerce to J. C. Van Blarcom, the cashier of the bank, for discount, who after inquiry as to the financial standing of the makers, bought the note for the bank, paying the face value thereof, less a reasonable bank discount; his action was approved the next day by the directors of the bank. At maturity the note was renewed for thirty days; at maturity of the renewed note the makers offered to again renew; this was denied them, and payment being refused suit was begun, a trial was had by jury, who returned a verdict for plaintiff. To set aside this verdict defendants Fitze & Loler filed the following motion for a new trial, to wit:

"(1) The verdict is against the law.

"(2) The verdict is against the evidence.

"(3) The verdict is against the law and the evidence.

"(4) The verdict is against the weight of the evidence.

"(5) The verdict is not supported by any evidence in the case.

"(6) The court committed error in admitting

illegal, incompetent, irrelevant and immaterial evidence on the part of the plaintiff.

"(7) The court committed error in excluding and refusing to admit competent, legal, relevant and material evidence on the part of the defendants.

"(8) The court committed error in giving the instructions given on the part of the plaintiff, each of which was illegal and improper.

"(9) The verdict ought to have been for the defendants instead of for the plaintiff."

The court sustained the motion and granted a new trial; from this ruling of the court the bank appealed.

The award of the new trial will be affirmed if it can be sustained upon any of the grounds set forth in the motion. Bank v. Wood, 124 Mo. 72; Hewitt v. Steele, 118 Mo. 463; Ittner v. Hughes, 133 Mo. 679. It becomes essential therefore to look into the facts as developed on the trial. The answer of Fitze & Loler, as an affirmative defense, pleaded the collateral contract of July 12, averred notice of the collateral agreement to the bank through VanBlarcom, its cashier, at the time the note was discounted, and notice of all the facts and circumstances surrounding the transactions between them and the Seventh and Olive Syndicate; averred their offer to renew and their willingness and readiness to again renew the note. This defense was put in issue by a reply. VanBlarcom was the president of the Seventh Street Realty Company, its principal stockholder, knew of the formation of the Seventh and Olive Syndicate, and in a general way knew its financial condition, and of its efforts to procure contracts for the erection of the building; he also knew that the Holland Realty Company was the substantial party in the syndicate, and that the other parties were taken into it as a matter of convenience; he must have known also that the Holland Realty Company was badly

embarrassed financially, and while he denies any specific knowledge of these facts, we think from his own evidence it is fair to infer that he had general and sufficient knowledge to put him on the inquiry as to the facts concerning the execution of the note when it was presented to him as cashier for discount; especially is this inference allowable in view of the fact that the note was made payable to J. A. Parker, secretary, was indorsed by him as such and by the Holland Building Company, and then by Parker, personally and in person offered by him for discount.   There is not a syllable of evidence, however, tending to show that any officer of the bank other than VanBlarcom had any notice whatever of the circumstances under which the note was given or of the collateral agreement, nor was the board of directors put in possession of any of these facts at the meeting when it approved of the purchase of the note.   Assuming that VanBlarcom had notice of the defects in the note, arising from the contemporaneous agreement made with the building syndicate, or assuming that he was possessed of such information of these matters as would warrant a fair inference of such knowledge, were the defendants entitled under the evidence to have the question of fact as to notice to the bank submitted to the jury?   We think not for this reason, that all the knowledge or information obtained by VanBlarcom concerning this note, he obtained as president of the Seventh Street Realty Company and through his efforts as such to forward the objects of the Seventh and Olive Syndicate, and not as cashier of the bank.   The bank was in no way interested in the Holland Building Company, in this realty company, or in the syndicate, and had no knowledge of their transactions.   Knowledge obtained by its cashier, by reason of his interest in and connection with them, obtained not in the perform-

KNOWLEDGE of cashier of bank.

ance of any duty he owed to the bank, is not notice to the bank. This is the well settled law of this state. Benton v. Bank, 122 Mo. 332, and authorities cited therein. No error was committed by the court in refusing to submit the question of notice to the jury, nor did the court err in rejecting evidence of notice to VanBlarcom, obtained in his private capacity, and not as an officer of the bank. The conversations had between VanBlarcom, Parker and Fitze, when the latter applied to the bank to renew the note for the second time, were unimportant. No declaration or admission of VanBlarcom made at the time as to what he knew of the note when it was discounted, was admissible against the bank, nor could VanBlarcom by any act or declaration of his made at that time not in the scope of his authority, impeach the *bona fides* of the purchase of the note by the bank. This answers all the contentions of error on the trial made by the respondents in their briefs and on the oral argument. The trial court was extremely liberal in the admission of evidence to affect the bank with notice, notwithstanding this liberality, there is not a word in all the record that tends in the least to impeach or contradict the clear proof that the bank was the *bona fide* purchaser of the negotiable promissory note in suit before maturity and for a valuable consideration without notice of any of the defenses set up in the answer. The trial court was clearly right when it instructed the jury to find the issues for the plaintiff, and clearly wrong when it awarded a new trial. There is no ground set forth in the motion for a new trial upon which the award can be supported, wherefore the judgment is reversed and the cause remanded, with directions that the trial court set aside its order granting a new trial; that it overrule the motion, and render judgment on the verdict of the jury.

All concur.