LAURA A. CONLEY, Respondent, v. JENNIE G. JOHNSON, Executrix, etc., Appellant.

Kansas City Court of Appeals. June 14, 1920.

1. **PROMISSORY NOTES:** Instructions. An instruction which directs a verdict for the plaintiff who claims as assignee of a promissory note if the jury finds that a payment was made on the note is erroneous, in that it fails to submit the question of the endorsement of the note to the plaintiff, and the execution of the note by the defendant's intestate.

2. **WITNESSES:** Wife of Deceased. In an action on a note against the administratrix of the estate who is the wife of the deceased, she may testify on the question of the present reputation of a witness for the plaintiff as she knows it in the community where it is sought to impeach the witness; she is disqualified only as to transactions or conversations with the deceased.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* ·Judge.

REVERSED AND REMANDED.

*Harris & Price* for respondent.

*George S. Starrett* and *N. T. Gentry* for appellant.

TRIMBLE, J.—This action, originating in the probate court, is on a demand against the estate of Spurgeon G. Johnson, deceased, founded upon a promissory note dated February 1, 1907, due one day after date for $1216.60 payable to the order of John E. Johnson. The note was credited on the date it was issued with $600, and a further credit of $5 appeared on the back thereof bearing the date of February 1, 1914.

The maker of the note, Spurgeon G. Johnson, and the payee thereof, John E. Johnson, were brothers. Both were dead at the time of the trial. The defendant is Spurgeon G. Johnson's widow and his administratrix. The plaintiff was formerly the widow of the payee John E. Johnson, but is now married to one, Conley. She claims that during the life of John E. Johnson he assigned the note to her.

Upon a trial in the probate court, judgment went in defendant's favor; and plaintiff appealed to the circuit court where it was tried *de novo*. Here plaintiff obtained a verdict and judgment for $1286.86 and defendant has appealed.

The two brothers lived some seven or eight miles out in the country from Columbia and were engaged extensively together in farming and raising stock. John E. Johnson died in 1910, and, as stated, his widow,

Laura A. Johnson, afterward married and is now the plaintiff Laura A. Conley. Spurgeon G. Johnson did not die till in January, 1919. The suit was instituted on May 18, 1919, and consequently, if the alleged credit of $5 as of February 1, 1914, was not a proper credit such as would constitute an acknowledgment of the indebtedness by the maker, then the note was barred by the ten years Statute of Limitations. The genuineness and validity of this credit was, therefore, a very acute and important issue in the case,.

The only witness who testified concerning the alleged five dollar payment was one, Hopper, who was plaintiff's witness. He did not testify in the probate court, nor was he subpoenaed to appear at the trial in the circuit court until after he had reached the courthouse on the day of the trial. He resided upon plaintiff's farm and worked there. He testified that more than five years before the trial, some time in the latter part of January, 1914, he was residing on his brother's place but happened to be at the John E. Johnson residence and that Mr. Crane, Mrs. Johnson's father was there; that Spurgeon G. Johnson came there and said to Mrs. Johnson he wanted to see her on some business and they went into an adjoining room where they talked for perhaps ten minutes and then Mrs. Johnson came to the door and called to her father, Mr. Crane, and he went in leaving the door open; that he heard them talking about a payment on a note; that Mrs. Johnson told Mr. Crane Spurgeon *made* a $5 payment on the note. Witness didn't know what Crane said, but that "it was all right or something;" that Mrs. Johnson went out, witness could see her through the open door as she went; that she went into the west room and then Mr. Crane came to him (the witness), and told him he wanted him to witness that Spurgeon *was going* to make a payment on the note; that as witness came to the door, Mrs. Johnson came by him into the room holding what looked like a note in her hand; that Mr. Johnson handed her a bill or paper money—he supposed it was

$5 he heard them say "five dollars" anyhow. Witness did not see the credit put on the note, but says he heard them speak of a note, that Mrs. Johnson told him, Spurgeon, that $5 was "a mighty small payment on a six hundred and some odd dollar note" and that Mrs. Johnson asked something about what date it was and Mr. Johnson (Spurgeon) told her "it was so near the 1st of February to just put it down the 1st of February, that was the date of the note or something like that;" that this transaction took place some time in the latter part of January, witness did not know just what date in January it was. Defendant had evidence to the effect that Spurgeon Johnson was not in Boone county on February 1, 1914, but some days prior thereto had left home and gone to his farm in Pettis county.

As this witness was a new factor in the case and defendant had no intimation that he would be a witness, defendant was not prepared with witnesses to impeach him. But defendant's counsel placed defendant herself upon the stand and sought to prove by her that she knew the aforesaid witness' general reputation for truth and veracity in the community in which he lived and that it was bad, that is, that it was then bad at the time of the trial. The court, upon objection, ruled that she was an incompetent witness to testify.

We think she was a competent witness to testify as to that matter. The evidence sought to be elicited from her was the *present* general reputation of the witness, it was not in regard to anything connected with the making of the contract or in reference to any conversations with either John E. Johnson the payee or Spurgeon Johnson her husband. It was solely with reference to a present existing fact which she would know herself as a citizen of the community. She was a party to the suit as administratrix and was qualified to testify since she was not to be examined upon any of the matters contained in the proviso to section 6954, Revised Statutes 1909. This statute is an enabling rather than a disabling statute; and it is well settled that a party to the action who is incompetent to testify to conversa-

tions had with the deceased is nevertheless competent to testify to conversations, transactions and things occurring since the granting of letters. [Chandler v. Hedrick, 187 Mo. App. 664, 670.] And a witness who is disqualified on account of the death of the opposite party may nevertheless testify as an expert to the handwriting of the deceased. [Banking House, etc. v, Rood, 132 Mo. 256, 263.] Letters of administration on the estate of Spurgeon G. Johnson were granted in January, 1919, and the trial occurred in October of that year. "The disqualification of the statute is not general but is limited to transactions between the witness and the party then dead." [Elsea v. Smith, 273 Mo. 396, 408. See, also, Ring v. Jamison, 2 Mo. App. 586, 592-3.] "The widow of a decedent may be a witness for or against the administrator of the estate of her deceased husband, whether solvent or insolvent, as to all such facts as the policy of the law does not require to be kept sacred and secret between husband and wife during marriage." [Stein v. Weidman, 20 Mo. 17, 21; Brown v. Patterson, 224 Mo. 639, 652.]

Plaintiff's instruction No. 4 was erroneous in that it told the jury "Your verdict must be for plaintiff" if they found that the $5 payment was made on the note at any time within ten years prior to May 19, 1919. This made the alleged credit the only issue to be determined before a verdict could be returned in plaintiff's favor, whereas there was still another issue in the case and possibly two, namely, the endorsement of the note to plaintiff and the execution of the note by deceased. Said instruction No. 4, therefore, conflicted with other instructions given. Hence it was error, [Smith v. Metropolitan R. Co., 126 Mo. App. 120; Mansur, etc., Co. v. Ritchie, 143 Mo. 587, 613; Shepherd v. St. Louis Transit Co., 189 Mo. 362.]

There is no merit in defendant's contention that the demurrer to plaintiff's evidence should have been sustained.

The judgment is reversed and the cause is remanded for a new trial. The other judges concur.