ALLEN COUNTY STATE BANK, Appellant, v. CEN- TRAL STONE COMPANY, Respondent.

Kansas City Court of Appeals, November 8, 1920.

CORPORATE STOCK: Purchase: Notes:. Separate Contemporaneous Contract: Bankruptcy: Notice. A corporation manfacturing ᵗcement and brick desired to acquire and interest customers by having· them become stockholders, to that end it sold stock, the face value of which was $1000, to defendant, the latter paying $250, in cash and giving three negotiable notes of $250, each and the corporation executing a contract whereby it agreed to furnish defendant with cement and brick of the value of $1000. The corporation delivered material to defendant for the cash payment, but never delivered any for the three notes and being thrown into bankruptcy became forever disabled to do so. Before becoming bankrupt, the corporation,. through its president, borrowed money of the plaintiff and endorsed these notes to plaintiff ᵗas collateral for the loan; the president endorsing them individually, also. The corporation defaulted in paying the loan and the president paid it, the plaintiff turning back to him the corporations notes. But the president requested the bank to keep them and bring suit for his benefit against defendant, which it did. *Held;* that the consideration had failed and plaintiff could not recover.

2. CONTEMPORANEOUS CONTRACT: Note: Endorsee: Construction. When a written contract is executed contemporaneously with a promissory ·note, concerning the same subject matter, one depending upon the other, they should be read together and construed together and if an endorsee has notice of the contract he will be *held* to abide by the contract as it affects his rights in payment of the note,

Appeal from the Circuit Court of Buchanan County.—
*Hon. Lawrence A. Vories,* Judge.

AFFIRMED.

*O. E. Shultz* for appellant.

*Culver & Phillip* for respondent.

ELLISON, P. J.—This action is founded on a petition in three counts, each declaring on a promissory note for $250 given by defendant to the Lumbermen's Portland Cement Company. Defendants answer pleaded that the notes were signed in connection with and as a part of a written contract whereby the payee in the notes (the Lumbermen's Portland Cement Company) sold to defendant certain shares of stock in the company for $1000, payment to be made by cash $250 and the three notes in suit for $250 each. It being a part of said written contract that in consideration of the sale of the stock for this cash and these notes, the payee company would furnish to defendant cement and brick, at market price, up to the amount of said cash payment of $250 and the notes in suit. In other words these notes were given for cement and brick which the Lumbermen's Company was to afterwards deliver to defendant. The trial court in finding of facts found: "The plan of organization of the cement company was to limit the stockholders to retail dealers in cement and brick, and to sell to a retail dealer a given amount of material, either brick or cement, and in consideration of such purchase and sale, to deliver to the retail dealer shares of stock in said company and thereby induce said retail dealer to become a permanent customer of said company. According to the testimony of the president, Mr. Woods, stock was sold only to the retail dealers in cement and brick for the purpose of insuring a free market for the product. As I recall, there were about one thousand such stockholders. The plan contemplated contracting with these retail dealers for the

sale of their material, securing the purchase price in advance, and using this money for the purpose of paying up the stock of the company, in order to enable it to acquire and operate a plant and carry on the business contemplated.''

The lumber cement company owned a subsiduary Gas company which was organized to furnish fuel gas to the lumber cement company. These companies owed the plaintiff bank and turned over these notes to it as collateral security for such indebtedness. This was done through W. E. Woods who was president of both companies, he also endorsed these notes individually. These companies failed to pay all of such indebtedness to plaintiff and Woods himself settled the balance and thereby became the owner of the notes in suit so given to plaintiff as collateral. But he requested plaintiff bank to keep them and bring suit upon them against defendant, which plaintiff did by instituting the present action. While this left Woods the real owner of the notes, yet it may be conceded that plaintiff may properly maintain this action as trustee of an express trust; standing, of course, in Woods shoes on all matters of notice.

The payee (Lumbermen's Portland Cement & Brick Company) delivered cement and brick to defendant to the amount of the cash defendant paid it, but failed to deliver cement and brick for which the notes were given. The Lumbermen's Portland Cement and Brick Company became bankrupt and its assets were sold.

Woods knew of the contract and that the consideration for the notes had not been paid and never would be and this plaintiff must be chargeable with his knowledge, for it is acting for him and at his request in prosecuting this action. It is clear that it should not recover.

But plaintiff advances the proposition that the contract to furnish material for the amount of the notes was collateral and though an indorser of negotiable notes has notice of the contract, it could not affect him, citing Jennings v. Todd, 118 Mo. 296.

The idea in support of this rule is that the collateral agreement will be performed, or if not performed, dam-

ages for the breach may be recovered, and therefore it would afford no ground of defense to the note. That might be true if the endorsee did not know the collateral agreement had been violated and the violator unable to make good in damages. Here, the lumber cement company became a bankrupt and its effects sold under bankruptcy proceeding. *It could not perform its agreement upon which the notes were based.* This inability to perform the collateral contract (by reason of being bankrupt if not by the actual bankruptcy proceeding), was known to plaintiff and to Woods long before plaintiff ever received the notes or Woods received them back. So the case resolves itself to this: Plaintiff gave the notes in suit for brick and cement to be afterwards delivered to him by the payee lumber and cement company of which Woods was president. The company did not deliver these articles and became disabled by bankruptcy from ever delivering, or responding in damages for failing to do so. Woods had knowledge of all this, and yet seeks to collect the notes though a prominent factor and party to the whole transaction.

Recurring to plaintiff's proposition that the contract was independent of the notes and the latter could be collected although the payee, never furnished the consideration agreed to be furnished, we think that taken on that ground and considering the matter from that point of view, the case is more like Simpson v. Van Laningham, 267 Mo. 286, Gas Co. v. Wood, 90 Maine, 516 and Hill v. Huntress, 43 N. H. 480, than Jennings v. Todd, supra. These notes and the contract to furnish cement and brick material for the amount of them, were really one contract. Each was executed in reference to the other, and the action, if not between the original parties, is between defendant the original maker and the representative of the original payee, the Lumber and Cement Company. For we must regard Woods as the real plaintiff who had knowledge of the whole affair and indeed transacted the business. We may ask the same question here as was asked in Gas Co. v. Wood, supra (approved by our Supreme Court in Simpson v. Van Laningham, supra.) ''Can

there be any doubt as to what the intention of the parties was? Are not the note and agreement 'connected by direct reference or necessary implication'? We think so, and that the same should be construed together as an entire contract, the stipulations of which are mutual and dependent, rather than independent and collateral."

The judgment should be affirmed. All concur.