# CITIZENS BANK OF EDINA, Appellant, v. WILLIAM KRIEGSHAUSER, Respondent.

**St. Louis Court of Appeals.   Opinion Filed September 18, 1922.**

1. **BILLS AND NOTES: Consideration: Sale of Stock: Ultimately Proved Worthless: Consideration not Invalidated.** Where a note was executed in consideration of the sale of stock by the payee under the terms of a written contract, that the stock ultimately proved to be worthless did not alter the fact that there was a valid consideration for the execution of the note.

2. ———: **Note and Contemporaneous Written Agreement: Mutual and Dependent Covenants: Notice of Infirmities.** Where a note was executed in consideration of the sale of stock by the payee under the terms of a contemporaneous written contract, to the effect that if the stock in fact became worthless, and the corporation's business and factory a complete failure, within a period of two years, the payee would accept the stock and return to the maker the note fully cancelled, the note and the contemporaneous written contract are to be taken as constituting mutual and dependent covenants, the two together comprising the entire contract between the parties, and if plaintiff bank, endorsee, took the note with knowledge of the written contract, then its right to recover is affected by the terms thereof.

3. ———: ———: ———: ———: **Evidence: Question for the Jury.** In an action on a note, where there was substantial evidence from which the jury could legitimately find that plaintiff bank, an endorsee, at the time of the acquisition of the note had knowledge of a written contract executed contemporaneously with the note, that question was properly submitted to the jury.

4. **CORPORATIONS: Officers: Dealing Therewith in Individual Interest: Corporation not Chargeable With Uncommunicated Knowledge.** Where an officer of a corporation is dealing therewith in his individual interest, the corporation is not chargeable with his uncommunicated knowledge of facts derogatory to his title to property constituting the subject-matter of the transaction.

5. **BILLS AND NOTES: Notice of Infirmities: Bad Faith: Rule Stated.** To constitute notice of an infirmity in a negotiable instrument of defect in the title of the person negotiating it, it must appear that the person to whom it is negotiated had actual knowledge of such infirmity or defect, or knowledge of such facts that his ac-

211 M. A.—3

tion in taking the instrument amounted to bad faith; however, it is not essential that proof of such knowledge be made by direct and positive testimony, but it may be shown by facts and circumstances in evidence which legitimately afford an inference that the holder of the paper took it with knowledge of such facts as to constitute notice under section 842, Revised Statutes 1919.

6. **WITNESSES: Payee in Note Dead: Competency of Surviving Maker.** Under section 5410, Revised Statutes 1919, providing that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead . . . the other party to such contract or cause of action shall not be permitted to testify, etc., where in an action on a note by plaintiff bank, endorsee, defendant was not permitted to testify to any transactions with deceased payee but was permitted to testify to a conversation with the cashier of plaintiff bank subsequent to the bank's acquisition of the note as to knowledge of an agreement made contemporaneously with the execution of the note, such testimony was properly admitted; the statute being construed as not rendering the surviving party incompetent as a witness for all purposes, but only to the extent that his testimony might be subject to question by the other party if living.

7. **EVIDENCE: Bank's Knowledge of Infirmities of Note: Admissions by Cashier: Competency.** Where in a suit on a note the cashier of plaintiff bank admitted that the bank had knowledge of a contract executed contemporaneously with the note, the admissions were not inadmissible in evidence upon the ground that they were not made while the cashier was transacting the bank's business, but were admissible as showing that the bank, through its executive officer, the cashier, had such knowledge.

8. **INSTRUCTIONS: Bills and Notes: Instruction on Fraud in Negotiation of Note: Not Based on Evidence: Error.** In an action on a note by an endorsee, an instruction given by defendant should have been refused for the reason that it deals with the question of alleged fraud, as to which there was no evidence.

9. ———: ———: ———: ———. Likewise it was error to give defendant's instruction which proceeded upon the theory that the jury could rightfully find either that the note was fraudulently obtained or that it was without consideration, and that in either event the verdict should be for the defendant.

10. ———: ———: Holder in Due Course: Burden of Proof: Instruction Placing Burden of Proof on Plaintiff: Error. In an action on a note by an endorsee, an instruction which told the jury that

if they found from the evidence that defendant, the maker of the note, and the payee at the time of the execution of the note in suit, made the contemporaneous contract offered in evidence, and that it was the intention of said parties that the note and contract should constitute one entire agreement and that within two years thereafter the said factory proved to be a failure and the stock worthless, then it devolved upon plaintiff to prove by the greater weight of evidence that it is the holder of the note in due course, etc., and unless plaintiff had "so proven by the greater weight of evidence" then the verdict should be for the defendant, *held* erroneous.

Appeal from the Circuit Court of Scotland County.— *Hon. N. M. Pettingill*, Judge.

REVERSED AND REMANDED.

*F. E. Robinson* for appellant.

*Claude M. Smith* and *James C. Dorian* for respondent.

ALLEN, P. J.—This is an action upon a negotiable promissory note for the sum of $2000 and interest, executed by the defendant on March 30, 1917, payable to the order of one E. E. Nance two years after the date thereof, and which was by the payee transferred by indorsement to the plaintiff bank. The petition is in the usual form. The answer admits the execution of the note by defendant, denies generally the other allegations of the petition, and specifically denies that plaintiff became the holder of the instrument in due course.

The answer further alleges that there was no consideration for the execution of the note by defendant, and that plaintiff acquired the same with full knowledge thereof. It is then alleged that at the time plaintiff claims to have purchased the note, Nance, the payee therein, was the president of plaintiff bank and also a large stockholder in the Edgar W. Kirk Soap & Cleanser Company, a corporation; that the assets of said corporation had

been exhausted, that its stock was worthless and the company in a failing condition and unable to meet its obligations, including a debt to the plaintiff of $6000 and interest; and that plaintiff knew these facts, knew that said company was insolvent and its stock of no value. It is alleged that Nance was indebted to the plaintiff bank, and that "with the knowledge and consent of plaintiff and with the intention to cheat and defraud this defendant," and for the purpose of liquidating his obligation to the bank, Nance represented to defendant that owing to his position as president of plaintiff bank and as one of the chief officers of the soap company he knew of certain facts, not known to the general public, that would insure the success and prosperity of the soap company and make its stock valuable; that relying upon said false and fraudulent statements, and being deceived thereby, defendant, on March 30, 1917, entered into a contract with Nance consisting of two instruments, one being the note sued on and the other a contract filed with the answer and marked "Exhibit One" and that "by the terms of their mutual agreement certain shares of said Soap Company stock were sold to defendant, upon condition that they were not to be paid for in money unless they proved valuable, and that on condition that if said stock was worthless and that said factory was to be a complete failure; then the said Nance was to cancel said notes and the said defendant was to return said stock, but that said stock was never delivered to the defendant or transferred to him, and the full and complete contract between the said Nance and this defendant was evidenced by said contract consisting of the two written instruments herein referred to and taken together constituting the entire contract between them." And it is alleged that the stock was worthless and defendant received nothing of value for the note sued on; that the plaintiff was fully informed of the facts pleaded concerning the purchase of the note, and acquired the same with knowledge thereof and of the fraud alleged to have been practiced upon defendant, and took the note subject to the equities exist-

ing between the original parties. It is further alleged that Nance is now deceased and his estate insolvent.

The reply is a general denial of the new matter in the answer.

The suit was instituted in the circuit court of Knox county where, upon a trial had, the jury were unable to agree upon a verdict. Thereafter the cause went on change of venue to the circuit court of Scotland county where a trial, before the court and a jury, resulted in a verdict and judgment in favor of the defendant, and the plaintiff appealed.

The evidence shows that at the date of the execution of the note sued upon, to-wit, March 30, 1917, E. E. Nance, the payee therein, was president of plaintiff bank, of Edina, Missouri, and was indebted to the bank in the sum of $1200 on two notes. The Edgar W. Kirk Soap & Cleanser Company, a corporaton with a capital stock of $300,000, had its factory and principal place of business at Edina. It appears that the corporation was in financial difficulties, was not then operating its factory, and had many obligations, including a debt of $6000 to the plaintiff. Nance was a stockholder thereof, as was also the defendant. On said March 30, 1917, Nance and defendant entered into a written contract for the purchase by defendant from Nance of certain shares of stock of the Soap Company. This contract, omitting formal parts, is as follows:

"First. Nance sells to Kriegshauser and transfers to him 149 shares of common stock of the Edgar W. Kirk Soap and Cleanser Company. Also his undivided interest in the stock bought of Foster and E. Ellis, and F. G. Rees which stock is now in the Bank of Edina, at a lump price of $5000, in notes of Kriegshauser consisting of one note of one thousand and two notes of two thousand dollars each, due two years from this date, at rate of six per cent interest, to be paid by Nance unless the dividends of this stock earns this amount.

"Second: It is further understood and agreed that at the end of this period, that if the factory has been a

success, Kriegshauser agrees to return to Nance One Hundred shares of said stock in exchange for the above mentioned notes.

"Third: It is further agreed that should the factory be a complete failure, Nance is to accept the entire amount of stock from Kriegshauser and return to him the above mentioned note fully cancelled."

The note in suit is one of the notes for $2000 mentioned in the contract and executed cotemporaneously therewith. This note was transferred to the bank by Nance on the following day, March 31, 1917. On the same day Nance resigned as president of the bank, and his resignation was accepted at a meeting of the board of directors held that day. The bank's records show that on that day Nance, having transferred the note to the bank, placed the sum of $2000 to his individual credit, and by check paid his indebtedness to the bank. According to the testimony of the bank's cashier, this transaction took place between five and six o'clock in the afternoon, after the meeting of the directors; the cashier, in behalf of the bank, agreeing with Nance to buy the note in suit. The record of the directors meeting of that day, purporting to show the indebtedness of the officers and directors to the bank, shows nothing owing to the bank by Nance.

There is much testimony in the record concerning the "Soap Company" which need not be here detailed. It will suffice to say that prior to the maturity of these notes the assets thereof were sold under a deed of trust to another company, the stockholders receiving nothing upon their stock.

Over plaintiff's objections, the defendant was permitted to testify to a conversation which he had with one Buster, then the cashier of plaintiff bank. He testified that two or three days after the execution of the contract and notes, Buster came to his place of business and said: "We have bought one of your notes that you gave Mr. Nance." When asked what Buster said about the contract, the witness said: "He said they knew of the con-

tract but it didn't amount to anything.'' Buster, as plaintiff's witness, denied that anything was said about the contract.

At the close of all the evidence in the case plaintiff offered a peremptory instruction, directing a verdict for the plaintiff, which the court refused. The refusal of this instruction is assigned as error.

It is true, as argued by learned counsel for plaintiff, appellant here, that the allegations of fraud in the answer are not supported by the evidence. We need not consider the contention made that the allegations of the petition are insufficient to charge fraud, for it is quite clear that there is no evidence of any fraud on the part of Nance in obtaining the note.

It is also true that the evidence fails to support the averments of the answer that the note was without consideration. The note was executed in consideration of the sale of the stock by the payee, under the terms of the written contract in evidence. Obviously both parties realized that this stock was of doubtful value. That it ultimately proved to be worthless does not in any wise alter the fact that there was a valid consideration for the execution of the note.

The attempted defenses of fraud and want of consideration are therefore out of the case. But the answer pleads as a defense of cotemporaneous written contract entered into between the parties, and avers that the stock in fact became worthless and the soap company's business and factory a complete failure; and that plaintiff purchased the note with knowledge of this contract, and is consequently bound thereby. It is entirely clear, we think, that under the evidence adduced the written contract would have afforded a complete defense to an action by the payee against defendant on this note. And plaintiff's right to recover, as the transferee of the note, must depend upon whether plaintiff is a holder in due course, under the statute. It is argued that though it be conceded, *arguendo*, that the plaintiff bank had knowledge of the

existence of the cotemporaneous written contract between the defendant and Nance, nevertheless plaintiff's right to recover as a holder in due course is in no wise affected thereby. In support of this position much reliance is placed upon the decision of our Supreme Court in Jennings v. Todd, 118 Mo. 296, 24 S. W. 148. In that case the payee of the note executed a collateral cotemporaneous agreement to the effect that the note was to become void if the payee failed to fulfill the terms of his contract —constituting the consideration for the note—to supply the maker with certain books, at stipulated prices, "from time to time in such quantities" as the maker might desire. And it was held that the collateral agreement did not affect the negotiability of the note in the hands of an indorsee though he took it with notice thereof. But we think that the case before us is governed by the more recent ruling of our Supreme Court in Simpson v. Van Laningham, 267 Mo. 286, 183 S. W. 324. In that case defendant executed certain notes for the purchase of one hundred shares of stock of a corporation, and cotemporaneous therewith the payee, who afterwards negotiated the notes to the plaintiff, signed a written agreement purporting to guarantee to the defendant that at the maturity of the notes he could, at his option, surrender the stock and have the notes cancelled and returned to him. Plaintiff acquired the notes affected by knowledge of this agreement. In this situation the Supreme Court said:

"Plaintiff contends the agreement accompanying the note was collateral and independent and constitutes no defense to this action even though it be conceded that the bank took with notice and that plaintiff, a transferee after maturity, is affected with all equities attaching to the note in the bank's hands.

"Practically this identical question was decided in American Gas & V. M. Co. v. Wood, 90 Me. 516. . . . The court in that case discusses at some length the authorities holding that independent collateral agreements

constitute no defense to promissory notes but afford separate actions for their breach, but holds that the note and agreement there considered are 'connected by direct reference or necessary implication' and are to 'be construed together as an entire contract, the stipulations of which are mutual and dependent, rather than independent and collateral.' The basis of this rule was stated to be that 'two contemporaneous writings between the same parties, upon the same subject-matter, may be read and construed as one paper; and this rule applies notwithstanding one of the writings is a promissory note, when the action is between the parties to it or their representatives.' It is indisputable that the same rule applies to a transferee with notice or after maturity. [Hill v. Huntress, 43 N. H. 480.]

"The agreement in the case at the bar is in writing, and the cases dealing with the admissibility of parol agreements are not in point. Neither, for obvious reasons, are the cases applicable in which attempts were made to defend on the ground that the consideration of the note sued on was an executory contract which had been breached but of which breach the transferee had no notice before he bought the note. The same thing is true of cases in which the defense was that the note was for property accompanied by a warranty, but not of its breach. In such cases the note and executory contract or the note and warranty are consistently construed to be independent agreements and the maker is remitted to his action upon his contract or warranty. To this class belong the cases cited by plaintiff in this case."

After distinguishing Jennings v. Todd, supra, and other cases upon which the plaintiff herein relies, the court continues:

"The intent of the parties is the principal thing, and the question is usually to be resolved upon the inquiry as has been said, whether that intent was that performance should be mutual, dependent and simultaneous. [Turner v. Mellier, 59 Mo. 1. c. 535, 536.] It is also true

that in case of doubt, covenants are ordinarily held to be dependent. These principles distinguish the cases cited by plaintiff and confirm the soundness of the conclusion in American Gas & V. M. Co. v. Wood, which we think correct, and which applied here, negatives plaintiff's contention that the agreement in evidence did not affect the right to sue on the notes. If the bank took with knowledge of the agreement, it took subject to it and, further, can even be said to have taken with knowledge of a breach, since it took with the notes the stock attached to them and dealt with in the agreement."

Upon the authority of Simpson v. Van Laningham, supra, we rule that under the facts here shown in evidence, the note in suit and the cotemporaneous written contract are to be taken as constituting mutual and dependent covenants, the two together comprising the entire contract between the parties; and that if plaintiff bank took the note with knowledge of the written contract then its right to recover is affected by the terms thereof. In this connection see also: Allen County State Bank v. Central Stone Co., 205 Mo. App. 588, 226 S. W. 665.

The propriety then of the court's ruling refusing plaintiff's peremptory instruction depends upon whether there was any substantial evidence from which the jury could legitimately find that plaintiff bank had knowledge of the written contract executed cotemporaneously with the note. We are of the opinion that the evidence adduced sufficed to take this question to the jury.

In this connection we may say that we think that it is not of consequence whether at the time of the transfer of the note to the bank Nance was still president of the bank. Our holding that there is evidence to warrant a finding that the bank had knowledge of the existence of the cotemporaneous contract does not proceed upon the theory that the knowledge of Nance, while president of the bank, would constitute knowledge to the bank. The law appears to be well settled that where an officer of

a corporation is dealing therewith in his individual interest, the corporation is not chargeable with his uncommunicated knowledge of facts derogatory to his title to property constituting the subject-matter of the transaction. [See Merchants National Bank v. Lovitt, 114 Mo. 519, 21 S. W. 825; Bank v. Fitze, 76 Mo. App. 356; Farmers Bank of Grandview v. Ozias, 209 S. W. 580.] But the testimony of defendant as to his conversation with the former cashier shortly after the purchase of the note, when taken with all of the other facts and circumstances of the case, is sufficient, we think, from which the jury may find knowledge on the part of the bank of the existence of the cotemporaneous contract. It is true that the former cashier denies making any statement to defendant in regard to the contract. But it was for the jury to resolve the conflict in this testimony.

It is true that to constitute notice of an infirmity in a negotiable instrument or defect in the title of the person negotiating it, it must appear that the person to whom it is negotiated had actual knowledge of such infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith. [Sec. 842, Rev. Stat. 1919.] Neither suspicion nor negligence will suffice to affect the purchaser's title. However, it is not essential that proof of such knowledge be made by direct and positive testimony, but it may be shown by facts and circumstances in evidence which legitimately afford an inference that the holder of the paper took it with knowledge of such facts as to constitute notice under the statute.

In this connection it should be noted that plaintiff contends that the trial court erred in admitting the aforesaid testimony of the defendant. But we think that this contention is without merit. Defendant was not permitted to testify to any transactions with the deceased, Nance. His testimony related solely to a conversation with the cashier of plaintiff bank subsequent to the bank's acquisition of the note. The statute, section 5410, Revised

Statutes 1919, providing that ''in actions where one of the original parties to the contract or cause of action in issue and on trial is dead . . . the other party to such contract or cause of action shall not be admitted to testify,'' etc., is construed as not rendering the surviving party incompetent as a witness for all purposes, but only to the extent that his testimony might be subject to question by the other party if living. [Elsea v. Smith, 273 Mo. 396, and cases cited, 202 S. W. 1071; Conley v. Johnson, 204 Mo. App. 185, 222 S. W. 891; Milligan v. Milligan Grocer Co., 207 Mo. App. 472, 233 S. W. 506; Cloves v. Cloves, 239 S. W. 145.] Nor do we think that the admissions said to have been made by the cashier were, under the circumstances, inadmissible in evidence upon the ground that they were not made while the cashier was transacting the bank's business. The testimony merely tended to show that the bank through its executive officer, the cashier, had knowledge of the contract executed cotemporaneously with the note. [Bank of Polk v. Wood, 186 S. W. 1186.]

We consequently rule that the court did not err in refusing plaintiff's peremptory instruction.

We are compelled to hold, however, that the court erred in instructing the jury. Beside formal instructions, the court gave five instructions at the request of the plaintiff and six at the request of the defendant; four instructions offered by plaintiff having been refused. The first instruction given for defendant should have been refused for the reason that it deals with the question of the alleged fraud, as to which there is no evidence. Likewise it was error to give defendant's instruction No. 5 which proceeded upon the theory that the jury could rightfully find either that the note was fraudulently obtained or was without consideration, and that in either event the verdict should be for the defendant.

We think that the court also erred in giving defendant's instruction No. 3. This instruction told the jury, in substance, that if they found from the evidence that

defendant and Nance, at the time of the execution of the note in suit, made the cotemporaneous contract offered in evidence, and that it was the intention of said parties that the note and contract should constitute one entire agreement, and that within two years thereafter the said factory proved to be a failure and the stock worthless, then it devolved upon plaintiff to prove, by the greater weight of the evidence, that it is the holder of the note in due course, etc., and unless plaintiff had "so proven by the greater weight of the evidence," then the verdict should be for the defendant. Section 845, Revised Statutes 1919, provides that "every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as holder in due course." Section 841, Revised Statutes 1919, provides that the title of a person who negotiates an instrument is defective when "he obtained the instrument or any signature thereto by fraud, duress or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as to amount to a fraud." Failure of consideration does not place the burden on the holder to prove himself a holder in due course. [See: Bank v. Wood, 189 Mo. App. 62, 173 S. W. 1093; Downs v. Horton, 287 Mo. 414, — S. W. —.] And no fraud was shown in the procurement of the note by Nance. Nor do we think that it can be said to have been shown that the note was negotiated "in breach of faith or under such circumstances as amount to a fraud," within the meaning of section 841, supra. We think that the title of the payee was not shown to be defective within the meaning of section 845, supra. Furthermore, were section 845 here applicable, it has been construed to place upon the holder the "burden of the evidence" and not the "burden of proof" or the duty to prove himself a holder in due course by the preponderance or greater

Citizens Bank of Edina v. Kriegshauser.

weight of the evidence. [See Downs v. Horton, 287 Mo. 414, l. c. 431, et seq, — S. W. —.] Under the ruling in the Downs case the burden of proof remains where it is placed by the pleadings.

It is unnecessary to discuss other questions touched upon in the briefs. For the reasons noted, the judgment is reversed and the cause remanded.

*Becker* and *Daues, JJ.,* concur.