**LOCAL ACCEPTANCE COMPANY,**
**Appellant,**

**v.**

**David E. KINKADE and Bonnie Kinkade,**
**Respondents,**

**Ted LAIS, doing business as Melody Sewing**
**Center, Third-Party Defendant.**

**No. 49363.**

Supreme Court of Missouri,

In Banc.

Nov. 14, 1962.

Douglas & Douglas, Neosho, for appellant.

Johnson, Johnson & Landis, Neosho, for respondent.

EAGER, Judge.

This case was transferred here by order of this court from the Springfield Court of Appeals. The opinion of that court appears at 353 S.W.2d 123. We shall state only such of the facts as are necessary in order to outline the issues and, where pertinent, to supplement the facts stated by the Court of Appeals.

The suit is one, purportedly, on an installment note for a balance of $285, with interest and attorneys' fees. We say "purportedly" because defendants deny that the instrument is a negotiable note. The verdict was for the defendants and judgment was entered accordingly. A third-party proceeding against Ted Lais was not tried, in view of the principal judgment. The Court of Appeals reversed this judgment, directed that judgment be entered for plaintiff, and ordered the third-party issue tried.

The instrument was most peculiar in form; it consists of a "negotiable promissory note" appearing in the upper right corner of the face of the paper, a computation of the price at the left, and a skeleton form of chattel mortgage below, along with a description of the property; beneath all this the defendants signed, with "Ted Lais" signing as a witness. On the back of the sheet appears almost a full page of "Conditions"; the "indorsement," appearing below these conditions, and referred to as such in the opinion of the Court of Appeals, was as follows: "For Value received, the within contract, the property therein described, on the reverse side, and all monies to become due thereunder, are hereby sold and assigned:

"WITH RECOURSE TO Local Accept Co
"Dealer   Melody Sewing Center   Ted Lais
Address   Joplin Mo."

The essential defense was that Ted Lais, operating as Melody Sewing Center, had sold to the defendants a sewing machine for which the instrument was given, upon his agreement that their payments could be made by sewing pre-cut garments which he would furnish each month; that for a period of five months Lais had furnished these, Mrs. Kinkade had done the sewing, and Lais had paid them according to the agreement; that thereafter Lais had defaulted, although they (Mrs. Kinkade, to be specific) had remained ready and willing at all times to perform; that Lais could not collect on the note because of the contemporaneous agreement which must be considered with the note, and that plaintiff, having actual notice thereof, was not a holder in due course, and stood in no better position than Lais. Defendants also insisted that the note was not negotiable, that it was not payable to bearer, that it had not been endorsed, and that plaintiff had not paid value for it.

On the vital question of notice, the only testimony came from Mr. Rapp, plaintiff's manager, and from Ted Lais, the seller. The conclusion of the Court of Appeals as to the testimony of Ted Lais was: "Ted Lais' testimony does not establish any facts which would give actual knowledge to plaintiff of any infirmity, defect or knowledge of any such facts that its action in taking the instrument amounted to bad faith." We find from the record that Mr. Lais testified in substance as follows: that he had been a salesman for one Keith Wilkerson who operated the Melody Sewing Center; that he had heard Wilkerson talk with plaintiff's local manager, Mr. Rapp, about selling sewing machines on a plan whereby the purchaser would sew pre-cut garments in order to earn the payments; that Wilkerson showed Rapp some of the garments and a form of the "sew" contract, which was similar to the one used in this case, and explained the proposed method of selling; that Rapp replied that it was a "good deal"; that thereafter Lais acquired the business and went to see Mr. Rapp; that he told Rapp that he proposed to handle his

sales on the "sew plan," in the same manner as Wilkerson had, and that he would need financing; that he wanted to know if Rapp would handle the paper as he had for Mr. Wilkerson; that Mr. Rapp *knew* (so stated without objection) that his proposal was that the customers would sew garments to earn the money to make the payments; that Mr. Rapp, after waiting to consult his supervisor, told him that "they would go ahead and handle it," and that Rapp agreed to that proposition; that his conferences with Rapp occurred before he made any sales at all. Lais further testified: that from time to time Rapp asked him if he had outlets for the garments; that the note and chattel mortgage forms were furnished to him by Mr. Rapp; that he filled out one of those forms when he made the Kinkade sale, and that he executed the "sew" contract; that he made the sale on the representation of that agreement, and that the purpose was to enable the Kinkades to avoid cash payments; that he went "broke" and was unable to pay for more sewing of garments, having no suitable sales outlets. Lais' evidence, though produced primarily in his own behalf as third-party defendant, was not in any way limited by objections or instructions. It is, therefore, in the case generally, and available to defendants. We are unable to take the same view of the evidence as the Court of Appeals took. It held, in substance, that the evidence did not make a submissible jury issue on the question of plaintiff's actual knowledge of any infirmity, or of plaintiff's good faith.

By Instruction No. 3 the jury was told, in substance: that if defendants executed both the "note and chattel mortgage" and the sew "agreement," and performed the terms of the sew agreement so long as it was possible for them to do so and made payments on the note accordingly, but that Lais defaulted thereon, although defendants were ready to perform,—then plaintiff stood in the position of Lais and could not recover on the instrument because of Lais' breach, *provided* (our italics) the jury further found that plaintiff "had knowledge of the plan

* * * prior to the time" it received the note and chattel mortgage from Ted Lais. In Instruction No. 5, obviously offered by plaintiff, it was hypothesized that if Lais had acted in good faith and had later gone "broke," plaintiff should recover unless it had "actual knowledge" of the sewing agreement at the time of its purchase of the note. We thus see that the jury, by its verdict, found the facts on the question of knowledge substantially as testified to by Lais.

■ It has often been held that a contemporaneous written contract, entered into between the original parties to a note, and connected with the note by direct reference or by necessary implication, may affect the payee's right to recover against the maker, and that the two instruments should be considered together as the entire contract. Citizens' Bank of Edina v. Kriegshauser, 211 Mo.App. 33, 244 S.W. 107; Williams v. Kessler, Mo.App., 295 S.W. 482; National Refining Co. v. Zuckerman, Mo.App., 183 S.W.2d 390; Simpson v. Van Laningham, 267 Mo. 286, 183 S.W. 324; Bank of Mountain View v. Winebrenner, Mo.App., 189 S.W.2d 429 at loc.cit. 439 (discussion in dissenting opinion); Leesemann v. Schulte, Mo.App., 24 S.W.2d 1083; People's Bank of Ava v. Rankin, Mo.App., 30 S.W.2d 638. There is no controversy whatever here concerning the execution of the "sew" agreement or of the intent of the parties thereto. It provided that pre-cut garments be furnished to Mrs. Kinkade for twenty-four months (the same period as the note instalments) except for "months when * * * cash payments are made"; also, that she be paid for the sewed garments $15 per month, the precise monthly payment due on the note; also, that Mrs. Kinkade might terminate the agreement by notice and by payment for any retained materials, "and payment of balance due Finance Company." There is no doubt that this agreement and the note were connected, at least by "necessary implication," if not by "direct reference." Lais certainly could not have recovered the balance on this note, if con-

sidered as the payee, free of his obligations under the "sew" contract. See the cases last cited. We consider it immaterial that only Mrs. Kinkade and Lais signed the sew contract. Her husband had signed the note and mortgage, he was present at and a party to all the proceedings connected with the sale, and the effect of the contemporaneous contract was to operate in his favor as well as his wife's. This point will be mentioned again later.

■ Despite some variation in the language used, it is now generally held that a subsequent holder of a negotiable note is not a holder in due course if he has actual knowledge of a defect or infirmity in the prior title to the note *or* if he takes in bad faith. Local Finance Co. v. Charlton, Mo. App., 289 S.W.2d 157; Citizens' Bank of Edina v. Kriegshauser, 211 Mo.App. 33, 244 S.W. 107; Bank of Hale v. Linneman, Mo. App., 235 S.W. 178. This rule has specifically been held to cover situations involving contemporaneous agreements. Some authorities have indicated, perhaps, a slightly less stringent rule by merely requiring, for instance, "knowledge of the agreement" (Simpson v. Van Laningham, 267 Mo. 286, 183 S.W. 324), or that the holder be a "transferee with notice" (National Refining Co. v. Zuckerman, Mo.App., 183 S.W.2d 390), or merely that he have "notice" (Williams v. Kessler, Mo.App., 295 S.W. 482; People's Bank of Ava v. Rankin, Mo.App., 30 S.W.2d 638). Certain cases, principally older ones, have indicated the necessity of bad faith or "mala fides" on the part of the subsequent holder (Jennings v. Todd, 118 Mo. 296, 24 S.W. 148; Mayes v. Robinson, 93 Mo. 114, 5 S.W. 611; Hunt v. Dean, Mo. App., 72 S.W.2d 831); however, when we consider the facts and specific language of those cases (see discussion in Kriegshauser, supra), we do not feel that they justify a rule different from that just stated above. We note, also, that bad faith in such instances may be shown by one's knowledge of the facts (Kriegshauser, supra). It is true, of course, as urged here by plaintiff, that mere negligence or suspicion are not sufficient to deprive a holder of his status as a holder in due course (Charlton, supra).

■ Under these authorities and the wording of § 401.052, RSMo 1949, V.A.M. S.,[1] we hold that there was substantial evidence to require the submission of plaintiff's status as a holder in due course, as dependent upon its "knowledge" or "good faith." This, in substance, was done here. Under that section of our statutes that status is negatived if one takes with "notice of any infirmity in the instrument or defect in the title," or if he does not take in "good faith." Defendants could have elected to submit their defense on either of these theories; they choose that of notice or "knowledge." We hold that an issue was fairly made on whether plaintiff had "actual knowledge" of the infirmity existing because of the "sew" contract. This does not involve any question of fraud. The Court of Appeals improperly directed that judgment be entered for plaintiff. It was not necessary that Mr. Rapp, manager of plaintiff, know in advance of the execution of *this specific note* and of the contemporaneous execution of this particular "sew" contract. It was sufficient that he had been advised, prior to the selling by Lais of *any* machines, that the sales would be made exclusively upon this method, that he assented to the method, and that he took Lais' paper with such knowledge. As indicating the sufficiency of knowledge of that general type, see again, Local Finance Company v. Charlton, Mo. App., 289 S.W.2d 157, loc. cit. 162(10); in other words, the knowledge may be that of a course of business. The Court of Appeals, in our opinion, misconceived the effect of Lais' testimony on this issue, and we ordered the case transferred here primarily for that reason.

■ We are not concerned with any questions of the burden of proof, although

1. All statutory references are to this revision, in view of the date of the instrument, January 13, 1959.

the parties have rather casually mentioned that subject, pro and con. We have assumed here, *merely for the purposes of this case,* that the note in question was a negotiable instrument, and that it was endorsed to plaintiff, in spite of the highly peculiar forms used; we do not decide the correctness of the ruling that this was a "bearer" note within the meaning of § 401.009. If this were held not to be a negotiable note, then certainly plaintiff would be subject to the infirmities of his transferor, so the present assumptions can be of no prejudice to plaintiff. While we have not answered appellant's points in the precise manner in which they were made, we consider that this opinion constitutes a full coverage of those points.

Plaintiff complains of Instruction No. 3 in certain respects. We have already stated its substance. These objections are: (1) that it was error to submit that "if the sewing payments were not made that the note would not have to be paid"; (2) that it was erroneous in directing a verdict for defendants upon a finding that Lais failed to pay for the sewing delivered on July 24, 1959; and (3) that therein the court erred in exonerating defendant David Kinkade, since he did not sign the "sew" agreement, did no work thereunder, and, therefore, should derive no advantage from its provisions.

As to (1): So far as this objection is concerned, the instruction constituted a direction that, if the two instruments together constituted the agreement between Lais and defendants, that if defendants fully performed the "sew" agreement so far as possible, but that Lais breached it by a failure to pay, then defendants had not been guilty of a breach by failing to pay further instalments; and that, if plaintiff, as the holder of the "note and chattel mortgage" *"had knowledge of the plan employed by Ted Lais in selling said sewing machine and as set forth in the instrument called 'Agreement' prior to the time when Local Acceptance Company received the instrument* * * *,"* then plaintiff stands in the same position as Lais and cannot recover. (Italics ours.) In view of the authorities already discussed, this complaint is without substance. As to (2): the reference to a failure of Lais to pay for the sewing delivered on July 24, 1962, was merely a part of the total breach hypothesized and of the readiness of defendants to perform. The recitation complained of was not erroneous. As to (3): this is merely a contention that Mr. Kinkade was not entitled to the advantages of the "sew" agreement because he did not sign it and did none of the sewing. We have previously indicated that this contention is not well founded. Mr. Kinkade had signed the note, he had thus furnished a substantial part of the consideration for Lais' agreement, and he was present at and participated in all the negotiations. He was entitled, as a third-party beneficiary if not otherwise, to the benefits of the agreement. The note and "sew" agreement are to be considered, as already indicated, as one contract and in essence Mr. Kinkade was a party thereto. The cases which plaintiff cites are not in point.

Plaintiff does not complain here of the use of the word "knowledge" in the instruction, as contrasted with the term "actual knowledge" as used in some of the cases; other cases use the term "knowledge" or "notice." The term "knowledge," used without qualification, would ordinarily mean actual knowledge and if any question remained the meaning of the word was further amplified by Instruction No. 5, offered by plaintiff and given by the court. That instruction, setting up defendant's theory, required "actual knowledge" on plaintiff's part of the "sewing agreement" in order to defeat recovery; and, of course, all the instructions are to be read together. We find no reversible error in Instruction No. 3, nor any other error on the points assigned.

Since the verdict and judgment were for defendants, that automatically disposed of

the third-party petition, so far as the merits were concerned. That petition should, however, be dismissed in order to fully clear the record. The judgment is affirmed and the cause is remanded for the sole purpose of permitting the court to dismiss the third-party petition.

It is so ordered.

All concur.