## J. C. SIMPSON, Appellant, v. O. L. VAN LANINGHAM.

**In Banc, March 1, 1916.**

1. **NEGOTIABLE NOTE: Notice of Infirmities.** Notes made payable to the maker and indorsed in blank by him become payable to bearer and negotiable by delivery; and a transferee

before maturity with actual knowledge of a. concurrent de-
.pendent agreement, and a transferee after maturity without
actual knowledge, take the notes with notice of the agreement
and that it makes them non-payable.

2. ————: Concurrent Dependent Agreement.  A negotiable.
promissory note and a concurrent collateral agreement, con-
nected by direct reference or necessary implication, the stipu-.
lations of which are mutual and dependent, are to be construed.
together as one entire contract; · and a transferee of the note.
after maturity, without actual knowledge of the agreement, can-.
not recover, if the agreement, when so construed, bars a re-
recovery.

3. ————: ——.——: Option to Surrender Stock for Notes.  The.
maker of negotiable notes received a concurrent written agree-.
ment, signed by a corporation and its president, reciting that.·
the maker had purchased one hundred shares of the capital
stock of the company, for which he had given his two notes.
in settlement, due in six months, and' guaranteeing that the
maker, at their maturity might, at his option, surrender the.
stock, whereupon the notes would be cancelled and returned
to him.  The certificates of stock, indorsed ·in blank, were at-.
tached to the notes, and the notes were transferred to a bank,.
whose cashier had full actual knowledge of the agreement.
Shortly afterwards the bank went into the hands of a receiver,.
who, after the maturity of the notes, sold them to plaintiff..
Held, that the notes and agreement did not constitute independ-
ent contracts, but they are dependent, and the agreement con-.
stitutes a defense to an action on the' notes; and since the
payee of the notes, when the agreement was delivered, was,
the holder, and the holder signed the agreement, the rule is.
not changed by the fact that another also signed it.

4. GUARANTEE.  The fact that the makers of an agreement.
"guarantee" certain things does not of itself constitute the
agreement a guaranty.  The word may be used simply to give.
emphasis and not to change the plain character of the agree-.
ment.

5. NEGOTIABLE NOTES: Conditioned on Return of Stock:
Failure to Return as Part of Defense.  Where negotiable.
.notes, given for the purchase of certificates of stock of a cor-.
poration, indorsed in blank, attached to the notes and de-
livered with them to the payee, were accompanied by a con-.
current dependent agreement that upon the maturity of the.
notes the certificates could be surrendered and the notes can-.
celled, and that agreement is set up as a defense to an action
on the notes, the instructions may authorize a finding for de-.
fendant without requiring a ' finding that he returned the.
stock or relinquished his right to it, since the certificates were.
already in possession of the holder of the notes, and it was,

impossible for defendant to tender the physical return of the stock.

6. ————: ————: **Evidence of Demand for Return of Notes.** And, under such circumstances, evidence that the maker demanded from the signers of the concurrent dependent agreement (the corporation and its president) the return of the notes, in accordance with the agreement, and being told they were in possession of a bank as transferee had his attorney to demand them from the bank, was competent to show an effort on defendant's part to comply with the agreement, as far as he could.

7. ————: ————: **Evidence of Election.** And evidence that, when defendant was approached by the attorney of the corporation on the theory that he was a stockholder, he announced that he had elected to surrender the stock and cancel the notes in accordance with the agreement, could not have prejudiced the rights of a holder of the notes with notice of the agreement.

8. **EVIDENCE: Hearsay.** A general objection that all the testimony on a particular subject contained in two depositions was hearsay should not be allowed if part of it is clearly not hearsay.

Appeal from Jackson Circuit Court.—*Hon. W. A. Powell,* Judge.

AFFIRMED.

*Robinson & Goodrich* for appellant.

(1)    The existence of the guaranty, even if the cashier had knowledge thereof at the time the bank purchased the note, constituted no defense to this action. Jennings v. Todd, 118 Mo. 305; Miller v. Altsway, 81 Mich. 196; Adams v. Smith, 35 Me. 324; Dow v. Tuttle, 4 Mass. 414; Davis v. McCurdy, 17 N. Y. 230; R. S. 1909, secs. 10022, 10024, 10025. (2) The court committed error in admitting in evidence defendant's testimony as to conversations he had had with, and statements made to, other persons, not parties to this suit, in regard to the guaranty given him by the Refrigerating Company and J. E. Brady, and in

regard to the bank cashier's knowledge of said guaranty. (a) They were simply self-serving declarations of the defendant, not made in the presence of his adversary. Milliken v. Green, 5 Mo. 489; Gordon v. Klapp, 38 Ala. 357; Nicholson v. Tarply, 70 Cal. 608; Williams v. English, 64 Ga. 546; Adams Express Co. v. Boskowitz, 107 Ill. 660; Handley v. Cal., 30 Me. 9; Neisbaum v. Thompson, 11 Md. 557; Kehrig v. Peters, 41 Mich. 475; Cain v. Cain, 140 Pa. St. 144. A party's own statements, not made in the presence of his adversary, are not admissible in his own favor. McLean v. Rutherford, 8 Mo. 109; Teller v. Patten, 61 U. S. 125; Alexander v. Handley, 96 Ala. 220; Rogers v. Schulenberg, 111 Cal. 281; Alston v. Grantham, 26 Ga. 374; Cotton v. Holliday, 59 Ill. 176; Corbel v. Beard, 92 Iowa, 360; Talbott v. Talbott, 25 Ky. 3; Boston v. Worcester, 67 Mass. 83; Griffin v. Bristle, 39 Minn. 456; Howard v. Hunt, 57 N. H. 467; Moody v. Gardner, 42 Tex. 411; McKesson v. Sherman, 51 Wis. 303. (b) Said conversation were hearsay evidence, and therefore not admissible. Chouteau v. Searcy, 8 Mo. 733; Atkisson v. Castle Garden, 28 Mo. 124; Coble v. McDaniel, 33 Mo. 363; O'Neil v. Crain, 67 Mo. 250; Fougue v. Burgess, 71 Mo. 389; St. Louis v. Arnett, 94 Mo. 275; State v. Sibley, 131 Mo. 530; Gordon v. Burris, 141 Mo. 611; Allen v. Transit Co., 183 Mo. 437; Bevis v. Railroad, 26 Mo. App. 19; Love v. Love, 98 Mo. App. 509; 16 Cyc. 1200; 11 Am. & Eng. Ency. Law, p. 520. (c) Moreover, said conversations and statements were wholly irrelevant to any issue in the case, and for that reason inadmissible. Irrelevant testimony is never admissible. 1 Greenleaf on Ev., secs. 50, 52 and 448; Eddy v. Baldwin, 32 Mo. 369; Ferguson v. Thatcher, 79 Mo. 511; Frederick v. Allgaier, 88 Mo. 598; State v. Blunt, 91 Mo. 503; Mathias v. O'Neill, 94 Mo. 520; Carlin v. Bank, 86 Mo. App. 592; Bank v. Bank, 64 Mo. App. 253; Thompson v. Bowie, 4 Wall. 463; Whitelaw v. Whitelaw, 96 Va. 712. (3) Defend-

ant's instruction authorized the jury to return a verdict for defendant without finding a performance on his part of the conditions necessary to entitle him to the benefit of the guaranty given him by J. E. Brady and the Refrigerating Company.

*William Thomson* and *D. C. Payne* for respondent.

Plaintiff cannot recover in this action. (a) Plaintiff is not a holder in due course. R. S. 1909, secs. 10022, 10024, 10025, 10026. (b) A trustee cannot delegate his power. Cassady v. Wallace, 102 Mo. 575; Garesche v. Inv. Co., 146 Mo. 436; Bailes v. Perry, 51 Mo. 449; Graham v. King, 50 Mo. 22. (c) One buying commercial paper after maturity takes it subject to equities. (d) Equities between maker and payee brought to actual knowledge of indorsee of negotiable note before his purchase of same before maturity, defeats recovery. Johnson v. Machinery Co., 144 Mo. App. 436; Bank v. Brisch, 154 Mo. App. 631; Bank v. Salmon, 117 Mo. App. 506; Bank v. Reeper, 121 Mo. App. 688; Bank v. Ornsdorff, 126 Mo. App. 654; 7 Cyc. 947-949-956. (e) When a collateral and contemporaneous agreement, forming a whole or a part of the consideration on the part of the payee of a negotiable instrument, has been breached by the payee and actual knowledge of such breach has been given to an indorsee who takes before maturity, such knowledge will defeat recovery in the hands of such indorsee. Bank v. Ornsdorff, 126 Mo. App. 654; Hunter v. Johnson, 119 Mo. App. 487; Jennings v. Todd, 118 Mo. 296; Studebaker Mfg. Co. v. Dickson, 70 Mo. 272; Davis v. McCready, 17 N. Y. 230; R. S. 1909, secs. 10022-10024, 10025, 10026, 10028. (f) Where one of the parties to a contract, either before the time for performance or in the course of performance, makes performance or further performance by him impossible, the other party is discharged and may sue at once for the breach. Wolf v. Marsh, 54 Cal.

228; Miller v. Ward, 2 Conn. 494; Dare v. Spencer, 5 Blackf. 491; Crabtree v. Messersmith, 19 Iowa, 179; Jones v. Walker, 13 B. Mon. 163, 56 Am. Dec. 557; Bassett v. Bassett, 55 Me. 127; Tel. Co. v. Semmes, 73 Md. 9; Grice v. Noble, 59 Mich. 515; Bolles v. Sachs, 37 Minn. 315; Hammer v. Breidenbach, 31 Mo. 29; Crump v. Mead, 3 Mo. 233; Clendennen v. Paulsel, 3 Mo. 230; Gibson v. Whip Pub. Co., 28 Mo. App. 450; True v. Bryant, 32 N. H. 241; Wollner v. Hill, 93 N. Y. 576; Nav. Co. v. Wilcox, 52 N. C. 481; Camp v. Barker, 21 Vt. 469; Hinckley v. Steel Co., 121 U. S. 264. (g) Courts incline strongly against the construction of promises as independent, and if possible they will be held to be concurrent or dependent so that a breach by one party will discharge the other. Larimore v. Tyler, 88 Mo. 661; Turner v. Mellier, 59 Mo. 526; Caldwell v. Dickson, 26 Mo. 60; Denny v. Kile, 16 Mo. 450; Randolph v. Frick, 57 Mo. App. 400; Billups v. Daggs, 38 Mo. App. 367; Kirkland v. Oates, 25 Ala. 465; Haney v. Caldwell, 43 Ark. 184; Peasley v. Hart, 65 Cal. 522; Smith v. Lewis, 24 Conn. 624, 63 Am. Dec. 180; Houston v. Spruance, 4 Harr. 117 (Del.); Clark v. Weis, 87 Ill. 438, 29 Am. Rep. 60; Harshman v. Heavilon, 95 Ind. 147; White v. Day, 56 Iowa, 248; Water Co. v. Winfield, 51 Kan. 104; Foster v. Watson, 16 B. Mon. 377; Golding v. Petit, 20 La. Ann. 505; Williams v. Hagar, 50 Me. 9; Coates v. Sangston, 5 Md. 121; Gates v. Ryan, 115 Mass. 596; Fultz v. House, 6 Sm. & M. (Miss.) 404; Railroad v. Cochran, 42 Neb. 531; Elliott v. Heath, 14 N. H. 131; Shinn v. Roberts, 20 N. J. L. 435, 43 Am. Dec. 636; Duffield v. Johnston, 96 N. Y. 369; Ducker v. Cochrane, 92 N. C. 597; Mehurin v. Stone, 37 Ohio St. 49; Becker's Estate, 166 Pa. St. 313; Hood v. Raines, 19 Tex. 400; Faulkner v. Hebard, 26 Vt. 452; Lowber v. Bangs, 2 Wall. 728, 17 L. Ed. 442. (h) No one claiming by virtue of the title which was obtained in said notes by the National Bank of Commerce can recover.

Jacobs v. Mitchell, 46 Ohio St. 601; Lancaster v. Collins, 7 Fed. 338; Rogers v. Smith, 47 N. Y. 324.

BLAIR, J.—From a judgment in the Jackson Circuit Court in a suit on two notes for $5000, plaintiff appeals.

Plaintiff sues merely as an assignee for collection purposes. The notes sued on were negotiable in form, dated September 17, 1907, and payable at the National Bank of Commerce of Kansas City, six months after date. Each was signed by defendant and was payable to himself or order.

There was evidence that these notes were executed in consideration of the purchase or proposed purchase by defendant of one hundred shares of the stock of the Merchants' Refrigerator Company, of which J. E. Brady was president. The stock of this last-named company had been increased, and Brady desired to dispose of some of this increase to defendant. There was evidence defendant was a reluctant buyer, but was persuaded by Brady and the cashier of the National Bank of Commerce to yield, and the result was defendant executed the notes in suit, payable to himself, indorsed them in blank and delivered them to Brady for his company, attaching to each note as collateral, fifty shares of the stock of the company contemporaneously issued to him, having indorsed the certificate of stock in blank. As a part of the same transaction the Refrigerator Company and Brady executed and, simultaneously with the delivery of the notes, delivered to defendant a contract in writing as follows:

                              The Great Western Life Insurance Co.
Office of President.              Kansas City, Mo.   9-16-1907
Mr. O. L. Van Laningham,
        City.
Dear Sir:
        You have this day purchased of the Merchants' Refrigerator Company 100 shares of the capital stock represented by

certificates Nos. 134 and 135 for 50 shares each for which you have given two notes of $5000 each in settlement due in six months.

This statement is for the purpose of guaranteeing to you that at the maturity of said notes you may, at your option, surrender the stock and if you do surrender said stock, we jointly and severally agree to cancel and return to you your two notes of $5000 each upon the delivery to us of said stock.

MERCHANTS REFRIGERATOR Co.

BY J. E. BRADY, PRES.

J. E. BRADY.

The answer to each count set up this agreement and averred it was part of the consideration of the notes sued on.

A few days after the notes were executed and delivered and the contract delivered to defendant, Brady and the Refrigerator Company transferred the notes by delivery only and for value to the National Bank of Commerce. There is evidence the bank had full notice of the contract or agreement delivered to defendant and, in fact, that the bank's cashier assisted in formulating the agreement set out and participated in the negotiations out of which it and the notes grew.

The bank subsequently went into the hands of a receiver, who sold the notes in suit, after maturity, with a multitude of others, to the Terrace City Realty Company and Dr. Woods, who jointly authorized plaintiff to collect them by this suit.

Plaintiff contends the agreement constitutes no defense, without regard to the question of notice to the bank, and complains of certain testimony admitted and instructions given and of rulings on objections to argument of defendant's counsel. The evidence, instructions and argument complained of need not now be set out, but will be adverted to in the course of the opinion.

I. The notes being payable to the maker and in-

**Negotiable Note: Dependent Collateral Agreement.** dorsed in blank by him thereupon became payable to bearer and negotiable by delivery and were so negotiated by defendant and then negotiated to the bank by his transferee. It appears from the evidence that

the bank became a holder for value before maturity.

Plaintiff contends the agreement accompanying the note was collateral and independent and constitutes no defense to this action even though it be conceded that the bank took with notice and that plaintiff, a transferee after maturity, is affected with all equities attaching to the note in the bank's hands.

Practically this identical question was decided in American Gas & V. M. Co. v. Wood, 90 Me. 516. In that case the action was upon a note. In defense there was offered a written agreement to the effect that if the maker did not wish to pay the note at its maturity, he should "receive it back on the surrender by him" to the payee "of one hundred shares of stock" which constituted the consideration of the note.

The court in that case discusses at some length the authorities holding that independent collateral agreements constitute no defense to promissory notes but afford separate actions for their breach, but holds that the note and agreement there considered are "connected by direct reference or necessary implication" and are to "be construed together as an entire contract, the stipulations of which are mutual and dependent, rather than independent and collateral." The basis of this rule was stated to be that "two contemporaneous writings between the same parties, upon the same subject-matter, may be read and construed as one paper; and this rule applies notwithstanding one of the writings is a promissory note, when the action is between the parties to it or their representatives." It is indisputable that the same rule applies to a transferee with notice or after maturity. [Hill v. Huntress, 43 N. H. 480.]

The agreement in the case at the bar is in writing, and the cases dealing with the admissibility of parol agreements are not in point. Neither, for obvious reasons, are the cases applicable in which attempts were

made to defend on the ground that the consideration of the note sued on was an executory contract which had been breached but of which breach the transferee had no notice before he brought the note. The same thing is true of cases in which the defense was that the note was for property accompanied by a warranty, and the transferee of the note had notice of the warranty, but not of its breach. In such cases the note and executory contract or the note and warranty are consistently construed to be independent agreements and the maker is remitted to his action upon his contract or warranty. To this class belong the cases cited by plaintiff in this case. In Jennings v. Todd, 118 Mo. l. c. 301, it is expressly stated that at the time Bush purchased Jennings's note "neither the fraud nor breach of contract had developed." In that case the note was payable at a fixed time. The fulfillment of the contract to furnish the maker certain books for a stated price depended upon the maker himself and was to be fulfilled "from time to time in such quantities" as the maker desired. The note was to become void upon the payee's violation of its contract to furnish the maker the books described. When what is said in the opinion is confined, as it should be, to the facts in the case, it accords with the general current of authority upon the subject and in no way is in conflict with the conclusion reached in American Gas & V. M. Co. v. Wood, supra.

Other cases cited are Adams v. Smith, 35 Me. 324; Miller v. Ottaway, 81 Mich. 196; Dow v. Tuttle, 4 Mass. 414; Davis v. McCready, 17 N. Y. 230.

In Miller v. Ottaway, the note was for the purchase price of two mares, the seller warranting that they were in foal. The note was negotiated before maturity, and the indorsee had knowledge of the warranty, but none of any breach of it. The court states the rule to be that it is not a "defense against a bona-fide holder for value that he was informed that the note was made in consideration of an executory con-

tract, unless he was also informed of its breach,''
though the defense might be interposed if he knew of
the breach. The court cites 1 Parsons on Bills &
Notes, 261, wherein the other cases cited by plaintiff
on this point are cited and relied upon, with others.

It is clear the case at bar does not fall within this
principle. The condition upon which the agreement in
this case provides that the note is to be returned is
quite different in character from that contemplated by
the rule announced in Miller v. Ottaway. In that case
the stipulations were clearly independent and independ-
ently actionable. The intent of the parties is the prin-
cipal thing, and the question is usually to be resolved
upon the inquiry, as has been said, whether that intent
was that performance should be mutual, dependent
and simultaneous. [Turner v. Mellier, 59 Mo. 1. c. 535,
536.] It is also true that in case of doubt, covenants
are ordinarily held to be dependent. These principles
distinguish the cases cited by plaintiff and confirm
the soundness of the conclusion in American Gas & V.
M. Co. v. Wood, which we think correct, and which, ap-
plied here, negatives plaintiff's contention that the
agreement in evidence did not affect the right to sue on
the notes. If the bank took with knowledge of the
agreement, it took subject to it and, further, can even
be said to have taken with knowledge of a breach, since
it took with the notes the stock attached to them and
dealt with in the agreement. Plaintiff's principals
bought from the bank after maturity and stand in the
bank's shoes, so far as the agreement is concerned.

It is suggested the agreement is not between the
parties to the note and that it cannot, therefore, be con-
strued with the note. The evidence makes it clear
enough that the note was transferred by delivery to
the maker of the agreement. It was payable to bearer,
being indorsed in blank by the payee who executed it to
himself. It was this note, so transferred, with which
the agreement had to do. The payee, when the agree-

ment was delivered, was the holder, and the holder signed the agreement. That another also signed does not change the rule.

It is also contended that the agreement was a mere guaranty and intended merely to afford an action in case of non-compliance with its terms. This argument is based upon the use of the word "guarantee" in the agreement. The term "guarantee" was doubtless used with the intent to give emphasis and not to change the plain character of the agreement.

II. It is urged that the instructions given for defendant authorized a finding for him without requiring a finding that he complied with the conditions of the agreement by returning the stock or relinquishing his rights to it. Plaintiff offered in evidence the notes and, attached thereto, the certificates of stock, *indorsed in blank*. From their date, the holders of the notes had the stock, so indorsed, in their possession. Defendant was wholly disabled to tender physically the stock in return for the notes, and that because plaintiff's assignor had possession of the stock when the notes matured. Having proved that the bank, in whose shoes he stands, had the stock in its possession and that it was indorsed in such manner that the bank could avail itself of it at will, and that he now has the same stock in the same condition, it does not lie in his mouth to complain because the jury was not required to find that defendant tendered to the bank the stock which the bank already had, under its full control, so far as this question is concerned.

*Return of Stock.*

III. Defendant, in his deposition, on cross-examination, testified that after the bank went into the hands of a receiver he was called into a meeting of the officers and directors of the National Bank of Commerce and reorganization committee. The receiver, also, was present. Dr. Woods, one of the plain-

*Hearsay.*

tiff's present principals (one of the present owners of the note) and Mr. Rule, cashier of the bank, were there. Defendant said he was questioned as to the notes, and said he "went into the case fully and stated Mr. Rule's connection with the matter and also stated he did not care to purchase the stock, but that he exercised his right to cancel" in accordance with the contract, and demanded his notes. He said he offered to produce the contract, but the chairman said it was not necessary, stating that if the notes were in the hands of innocent parties they would have to be paid. Defendant testified he replied they were not in the hands of innocent parties, but of the Bank of Commerce, which had notice of the whole transaction. This testimony appears, piecemeal, in two depositions.

The objections made in this connection were that the above was hearsay. One fault with the objection now relied upon is that it included in the scope of the matter objected to defendant's offer to produce the contract and other things clearly not hearsay. It was too broad. Further, it was competent to show that Dr. Woods had notice of the bank's knowledge of the agreement before he purchased the notes in suit, particularly since these notes were purchased by him and another, in connection with other paper of the face value of $432,000 for the sum of $30,000.

IV. Objection is also made to testimony of defendant that he demanded from Brady and the Merchants' Refrigerator Company the return of his notes, in accordance with his agreement; that he was told the bank had the notes, and he then caused his attorney to demand the notes from the bank. In this he is supported by Brady and his attorney. This testimony was competent to show an effort to comply with the agreement, so far as defendant could. The principle relied upon by plaintiff in connection with this complaint concerning the instructions would have required of defendant an effort to surrender the stock and a demand that

the notes be canceled under the agreement had the stock not been in the possession of the holder of the note. The testimony could not have injured plaintiff in any way. The same is true of defendant's testimony that when approached by the attorney of the Refrigerator Company on the theory that he was a stockholder thereof he announced that he had elected to surrender the stock and cancel the notes. This evidence could not have prejudiced plaintiff, since it is conceded the written agreement authorized defendant to make such election as against the Refrigerator Company, and plaintiff stands simply upon the ground that the bank had no notice of the contract and that, even if it had, the notes in its hands would not have been affected by it. Practically all of the testimony objected to was elicited by plaintiff's counsel on cross-examination but read to the jury by defendant's counsel.

V. Several objections were made during the argument of defendant's counsel. In all instances except one, the court ruled with plaintiff and admonished counsel for defendant. No requests for stronger rebukes were made. At one point counsel for defendant said: "The Terrace Company was formed for the very purpose of manipulating this stuff, nearly all the assets of that bank." Counsel for plaintiff objected on the ground that "the instruction of the court is, that does not constitute a defense." Counsel for defendant rejoined that the instruction did not state it was "a circumstance the jury cannot consider." The court merely remarked "Go on." The objection now made, that the statement would prejudice the jury, was not made in the trial court. Further, there was evidence tending to show the statement had truth in it. At the most there is nothing indicating that the trial court, who had heard all the argument in the case, abused its discretion in ruling as it did. The judgment is affirmed. All concur, except *Woodson, C. J.,* and *Graves* and *Bond, JJ.,* who dissent.