259 S.W.2d 854 (1953)
M. F. A. MUT. INS. CO.
v.
QUINN et al.
No. 21897.
Kansas City Court of Appeals. Missouri.
May 4, 1953.
*856 Ralph L. Alexander, Warren D. Welliver, Howard B. Lang, Jr. and Alexander, Ausmus, Harris & Welliver, Columbia, for appellant.
Peterson & Nelson, Paul M. Peterson and Will L. Nelson, Columbia, for respondents McAdam, Caldwell & Hamrick.
Howard F. Major, Columbia, for McJilton.
Sapp & Bear and William H. Sapp, Columbia, for respondents, Charles and Raymond Quinn.
SPERRY, Commissioner.
This appeal was transferred to us from the Supreme Court. See M.F.A., Mutual Insurance Company, a corporation v. Charles Quinn, Raymond Quinn, William K. McJilton, John Marvin McAdam, James E. Caldwell and Mildred Hamrick. Mo. Sup., 251 S.W.2d 633.
Plaintiff sought a declaratory judgment to the effect that its automobile liability policy No. 1-35435 was not in force and effect on the morning of January 13, 1950, between 7:50 and 8:25 A.M., when a truck, described in said policy, owned by Charles Quinn and being then and there driven and operated by defendant Raymond Quinn, was involved in a collision with an automobile owned and operated by defendant William K. McJilton. Defendants McAdam, Caldwell, and Hamrick were passengers, riding in the McJilton automobile at the time the collision occurred.
The cause was submitted to a jury. The verdict was for defendants, upon which a judgment was entered. Plaintiff appeals.
The pertinent allegations of the petition, as stated by the Supreme Court, 251 S.W.2d 633, were:
"Paragraph 2 of plaintiff's petition alleged: The issuance in June, 1949, of the policy, `effective June 29, 1949, to December 29, 1949,' upon the truck, to Charles Quinn as `insured'; that under the policy `plaintiff agreed to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of liability imposed upon the insured by law for damages * * * because of bodily injury sustained by any person or persons, caused by accident arising out of the ownership, maintenance or use of the truck; `that said policy provided that the limit of plaintiff's liability for all damages * * * arising out of bodily injury to one person in any one accident was $10,000 and for bodily injury to two or more persons in any one accident was $20,000 and for damages to property of others in any one accident was $5,000; said policy provided that the unqualified word "insured" wherever used therein included not only the named insured but also any person legally responsible for the use of said truck, provided the actual use was with the permission of the named insured; said policy further provided that plaintiff should pay to the named insured damages to said truck arising out of collision in the amount of the actual damages caused by said collision, less the sum of fifty dollars ($50.00); said policy also provided that plaintiff should defend in the name and in behalf of the insured any suit alleging such injury, and seeking damages on account thereof, even if such suit be groundless, false or fraudulent.'
"The petition alleged that plaintiff had extended the policy for ten days, that Quinn failed to reinstate the policy within such *857 period and that the policy expired January 8, 1950; that on January 13, 1950, after the collision, Quinn paid a $36.15 premium to plaintiff's `part time soliciting agent' who forwarded it to plaintiff; that plaintiff received the $36.15 the same day and on January 16, 1950, mailed Quinn a receipt therefor; and that on January 16, 1950, plaintiff notified Quinn that the policy was not in force at the time of the collision, that plaintiff would not `reinstate' the policy and tendered Quinn the $36.15, which tender Quinn refused.
"Paragraph 7 was: `Plaintiff states that claims have been made by the defendants (naming the four occupants of the McJilton car) against the defendants Charles Quinn and Raymond Quinn for damages growing out of said collision and said defendants Charles Quinn and Raymond Quinn have notified plaintiff of said claims for damages and have requested plaintiff to entertain and recognize said claims because said defendants Charles Quinn and Raymond Quinn claim and assert that plaintiff's said policy of insurance was in full force and effect at the time of said collision. In this connection, plaintiff states that said defendants Charles Quinn and Raymond Quinn have requested and demanded that plaintiff investigate said collision and to defend them against any and all claims that might grow out of said collision.'
"In Paragraphs 8 and 9, plaintiff denied liability on the ground that the policy was not in effect at the time of the collision, and asserted that plaintiff was `under no obligation to defendants Charles Quinn or Raymond Quinn to investigate said collision or to defend any claims growing out of said collision or to pay to any of said defendants any sum which defendants Charles Quinn or Raymond Quinn might become obligated to pay by reason of liability imposed upon said defendants by law for damages growing out of said collision.'"
Defendants, by their several answers, admitted the allegations contained in paragraphs 2 and 7 of the petition. They alleged that, on January 13, 1950, prior to the occurrence of the collison, defendant Charles Quinn paid to J. E. Saunders, plaintiff's agent, the sum of $36.15 as and for the semi-annual premium then due on said policy; that the policy was thereby reinstated and extended; that, on January 16, 1950, plaintiff forwarded to Quinn a receipt for said premium; and that said policy was in full force and effect at the time the collision occurred, having been renewed or reinstated for a term of six months beginning December 29, 1949.
Plaintiff's evidence was to the effect that the policy was issued to Charles Quinn on June 29, 1948, for a period of six months, ending December 29, 1948, at 12:01 A.M.; that said policy provided for its renewal at six month intervals thereafter upon payment of the specified semi-annual premium of $36.15 on or before due date; that it was so renewed and kept in force from December 29, 1948 to December 29, 1949; that the premium due for the period beginning December 29, 1949 was not paid; that plaintiff extended said policy and kept same in force until January 8, 1950; that on January 8, 1950 the policy was lapsed for nonpayment of premium due December 29, 1949 and was, thereafter, without force or effect.
Charles Quinn received a letter from plaintiff, urging him to "re-instate" policy No. 1-35435, by paying the "premium due" of "$36.15." The letter was written on plaintiff's stationery, dated Janaury 9, 1950, and was received January 11. It was signed by A. D. Sappington, "General Counsel" for plaintiff and stated, among other things: "P.S. If you decide to reinstate your M.F.A., insurance, pin a check for the premium due to this letter and mail to the company." (Italics ours.)
Charles Quinn stated that he received the letter January 11, 1950; that he cannot read or write; that his wife told him that his insurance was due; that, at about 7:00 A.M., January 13, 1950, he took the letter and walked to the road, a short distance from his home, intending to board a bus for Columbia, where plaintiff's office was located, and to pay the premium; that the bus was due at about 7:30 but he left his house earlier, hoping to "catch" a ride and save 85 cents fare; that a man from Iowa *858 picked him up and took him to Columbia; that he alighted near the business house of M.F.A., Exchange, plaintiff's duly authorized agent; that he walked to the Exchange and handed the above-mentioned letter to J. E. Saunders; that he paid in cash to Saunders, $36.15; that he paid the premium at 8:05 A.M.; that he, at that time, had no knowledge that there had been a collision between the truck and the McJilton automobile, if such collision had occurred, but learned about the collision two hours later.
Mr. Saunders stated that Charles Quinn paid said premium to him, in cash, at 8:30 A.M.; that he, Saunders, wrote a check on the Exchange, payable to plaintiff, folded it in the letter, placed the letter and check in an envelope and mailed to plaintiff. Plaintiff admitted that the check was received at its office on that same day.
Defendant Raymond Quinn stated that he was driving the truck at the time the collision occurred; that his father was not present; that he, thereafter, proceeded to Columbia, to the M.F.A., Exchange where, at about 10 o'clock A.M., he reported the accident to Mr. Saunders, who told him to report same to plaintiff's office; that he immediately telephoned plaintiff's office, from the Exchange, and reported the collision. Plaintiff does not deny that the collision was reported by Raymond Quinn, by telephone, during the forenoon of January 13, 1950.
The exact time the collision occurred, with reference to the exact time Quinn paid the premium to plaintiff's agent, is in sharp dispute. Plaintiff produced strong and convincing evidence which tended to prove that the collision occurred at 7:55 o'clock, A.M., and that the money was paid at 8:30 A.M. Defendant's evidence was to the effect that the money was paid at 8:05 A.M., and that the collision occurred between 8:05 and 8:25 A.M.
It is admitted that plaintiff caused two of its investigators to go to the scene of the collision, at about noon of January 13, where they interviewed witnesses and investigated the circumstances of the collision.
It is also admitted that plaintiff mailed a card to Charles Quinn, and that he received it in due course. It was postmarked at Columbia, Mo., January 16, 1950. On the address side of the card the following appeared: 135435, (which is the policy number) and the following:
"Policy Premium, Date Paid 1-13-50 amount $36.15; Date due___."
On the reverse side appeared the following:
"Premium Receipt For Insurance
This is an acknowledgment to the policyholder to whom this card is addressed of the receipt of premium on policy designated on opposite side hereof. This renews your policy for six months from 12:01 A.M. on due date shown on reverse side of this card. (Italics ours.)

* * * * * *
 M.F.A. Mutual Insurance
 Company
J. M. Silvey F. V. Heinkel
 President Chairman of the
 Board
Paul Keithley R. J. Rosier
Secretary Secretary of the
 Board."
Under date of January 17, 1950, plaintiff wrote Charles Quinn that his application for reinstatement of the policy had been rejected, and tendered to him $36.15.
Plaintiff contends that the burden of proving the alleged contract of insurance is on defendants. The burden of proof in declaratory actions depends often on the condition of the pleadings and the character of the issues when that question arises. BorchardDeclaratory Judgments, 2nd Edition, 404-409. The burden of proof usually rests where it would have rested had a different type of suit been brought. 16 Am.Jur. p. 337, par. 69. In this case, the burden of proving the existence of a valid contract of insurance at the time the collision occurred rested on defendants. Travelers Insurance Co. v. Greenough, 88 N.H. 391, 190 A. 129, 109 A.L.R. 1096, 1098; Reliance Life Insurance Co. v. Burgess, 8 Cir., 112 F.2d 234, 240. (Judge Sanborn's concurring opinion.)
*859 Plaintiff contends that the court erred in overruling its motion for directed verdict. It is urged that construction of the writings and acts relied on by defendants was a matter of law, to be determined by the court. There was oral testimony on behalf of all parties, by a large number of witnesses. Their testimony was necessary in order to establish certain acts, facts, and circumstances which constitute the body of the evidence upon which decision in the case turns. Since determination of the issues involves the determination of facts in a law case all parties were entitled to such determination by a jury. Crollard v. Northern Life Insurance Co., 240 Mo.App. 355, 200 S.W.2d 375, 382; State ex rel. U. S. Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S.W.2d 25, 31. The establishment of the existence of certain facts essential to defendants' case depended upon the weight and credibility to be given to the oral testimony of their witnesses, which was for the jury. See Section 527.090 RSMo 1949 V.A. M.S.; Hogsett v. Smith, Mo.App., 229 S.W.2d 20, 21.
There was substantial evidence tending to prove the existence of a valid contract of insurance at the time the collision occurred. The policy, No. 135435, was issued June 29, 1948, for a period ending December 29, 1948, "and for terms of such duration thereafter as the required renewal premium is paid by the insured on or before expiration of the current term and accepted by the company." It was, therefore, a continuing policy, contingent upon payment of premiums as they became due periodically. For the convenience of plaintiff renewal premiums were required to be paid on or before expiration of the current term, but plaintiff could waive prompt payment of premiums. 44 C.J.S., Insurance, § 286, pp. 1134-1135; Wiser v. Central Business Men's Ass'n, Mo.App., 229 S.W. 409, 410. Forfeiture of an insurance contract for non payment of premiums is not favored in the law and courts are prompt to seize upon circumstances which indicate an election to waive the forfeiture. 32 C.J. page 1347, 45 C.J.S., Insurance, § 712. An insurance company which has, in the course of its dealings, accepted past due premiums without insisting on forfeiture, will be held to have waived its right to forfeit where, as here, it extended the time for payment ten days and, thereafter solicited the payment of the past due premium, and accepted same when paid. 32 C.J. 1347, 1349, 45 C.J.S., Insurance, §§ 712, 715. There was no provision in said policy by which the insurance was suspended from expiration date until payment of premiums; and subsequent payment of a premium, then past due, and its acceptance, is evidence of a waiver of plaintiff's right to insist on prompt payment. 44 C.J.S., Insurance, § 286, p. 1136; Keet-Rountree Dry Goods Co. v. Mercantile Town Mut. Insurance Company, 100 Mo. App. 504, 512, 74 S.W. 469.
There is evidence from which the jury could have found that the parties, by contract, agreed to renew the policy. Plaintiff wrote insured, after the ten day extension had expired, urging him to reinstate the policy by pinning his check to the letter and mailing it. The letter reached insured two days after it was written. Insured, two days later, accepted said offer and paid the premium. The money was accepted by plaintiff at its home office on January 13, after it had full knowledge of the collision and had investigated the circumstances. Three days later, its officers caused to be mailed to him a receipt, notifying him that the "premium due" on policy 1-35435, had been received and informed insured that "this renews" your policy as of the "due date" shown on the reverse side. No date was actually shown on the reverse side of the card; but none was necessary. The policy and premium receipt must be considered together in determining what contract was entered into, and its terms, because the "premium receipt" card directly referred to insured's policy, No. 1-35435. Simpson v. Van Laningham, 267 Mo. 286, 294, 183 S.W. 324; National Bank of Commerce of Kansas v. Flannagan Mills & Elevator Co., 268 Mo. 547, 573, 188 S.W. 117. There was but one premium due on the named policy, that of December 29, 1949. The Sappington letter also referred to the policy by number. The letter, as well as the receipt card, referred to payment *860 of the "premium due" on the policy. The premium receipt informed insured that this premium had been paid and that "this renews your policy for six months from 12:01 A.M., on due date," shown on reverse side. Due date, or "date due," appearing on the opposite side, can refer only to the "due date" of the policy premium as shown by the policy itself. No extraneous evidence was needed, or was permissible, to explain what was meant by these writings.
However, plaintiff contends that the subject of the contract had been destroyed when the contract of renewal was entered into. The general rule is that the property must be in existence when the risk attaches or the policy is void. Mallard v. Hardware Indemnity Insurance Co. of Minnesota, Tex.Civ.App., 216 S.W. 2d 263, 266. However, insured had no knowledge that a loss had occurred, if it had occurred, when he paid the premium; and, before plaintiff finally mailed its receipt, it had full knowledge of all facts connected with the collision. It knew that the collision occurred either a few minutes before or a few minutes after insured accepted its offer of renewal. It is not a certainty that it occurred either before or after the money was paid. With full knowledge of all facts plaintiff chose to waive any rights that it may have had to decline the renewal contract. The amount of the loss had not been established. The liability of insured had not, and has not, been established. More than one risk was covered by the policy. Under the circumstances here shown, we know of no rule that would prevent plaintiff from entering the contract for renewal of the policy. It would not be against the public interest to permit an insurance company to fulfill a contract which it had invited its customer to accept, where the facts are as they appear in this case.
Plaintiff contends that the court erred in giving Instruction "A," alleging that it does not require a finding as to the exact time when the collision occurred with reference to when the premium was paid. In our view such a finding was not required.
It is contended that defendant's Instruction "A," was erroneous because it, in effect, directed a verdict for defendants, having submitted no disputed fact for determination. Plaintiff's contention is bottomed on the theory that the facts submitted to the jury in the instruction were not in dispute. While the facts submitted may not have been controverted by plaintiff's evidence, yet it was proper to submit same. Hogsett v. Smith, Mo.App., 229 S.W.2d 20, 21. The facts submitted, if found by the jury, justified a verdict for defendants.
Plaintiff says that it was error to submit the fact of plaintiff having sent adjusters to the scene of the collision, after payment of the premium and prior to the mailing of the premium receipt. It was proper to submit such facts, in this case, because it tended to prove the quantum of knowledge of the facts, possessed by plaintiff at the time the premium receipt was mailed, regarding the time and circumstances of the collision as bearing on plaintiff's later action in mailing the receipt. It tended to show waiver with full knowledge of all material facts.
It is argued that the instruction submitted questions of fact not in evidence, to-wit: a finding that plaintiff, by the Sappington letter, advised insured that he could "reinstate and renew" the policy, whereas the letter used the word "reinstate." From all of the evidence in the case, the abovementioned letter, the policy, and the premium receipt, plaintiff used the two words interchangeably, indicating that it ascribed to them identical or synonymous meaning.
Complaint is made of the submission of the question of authority of Saunders to "receive and accept" the payment of premiums on policies. It is urged that there was no evidence to support said submission and that such language constitutes a comment on the evidence. There was evidence that Saunders was assistant manager of plaintiff's agent's business; that he had written the policy; and that all of insured's dealings regarding it had been with him. It may be inferred, therefore, *861 that insured had previously paid premiums thereon to Saunders. In view of plaintiff's admission that it received the premium through Saunders it could not have been harmed by the above submission.
It is contended that the court erred in failing to submit plaintiff's special interrogatories. The point is ruled against plaintiff. Crollard v. Northern Life Insurance Co., supra, 382.
It is urged that the court erred in refusing to admit evidence of the general practice of plaintiff in handling "renewals and reinstatements," and to explain the premium receipt card. When the premium receipt card and the policy are considered together no parole evidence was required in order to clarify the meaning. Furthermore, it was not shown, nor was such a showing attempted, that insured, who could scarcely write his own name, was familiar with or knew anything about such customs and practices, or that he should have had such knowledge. The contention is ruled against plaintiff. Jordan v. Daniels, 224 Mo.App. 749, 27 S.W.2d 1052, 1056; Murphy v. Reed, Mo.App., 193 S.W.2d 947, 949; 20 Am.Jur. par. 333, page 311; Williston on Contracts, Rev.Ed.Vol. 3, page 1901; Restatement of the LawContracts, page 349.
At the conclusion of the jury trial the court made an entry, based on the verdict, to the effect that plaintiff take nothing by its suit against defendants and that defendants have and recover their costs.
After motion for new trial had been duly filed and adversely ruled, the following judgment was entered.
"Now on this day come the parties hereto, the plaintiff and defendants, by their respective attorneys, and this cause having been heretofore tried before a jury and said jury having signed (found) the issues herein for the defendants and against the plaintiff, the Court now finds that the insurance policy issued by the plaintiff, and subject of controversy in this cause, was in full force and effect at the time of the accident on the 13th day of January, 1950.
"It is therefore adjudged by the Court that the said insurance policy was in full force and effect at the time of the accident on the 13th day of January, 1950."
Plaintiff contends that the judgment is a nullity. Apparently plaintiff refers to the first of the above-mentioned entries as "the judgment." However, that entry could not have been a final judgment because, after it was made, a motion for new trial was filed and ruled. Thereafter, the court entered a final judgment, which we have quoted. That is the judgment from which plaintiff appealed.
That judgment is responsive to the pleadings and the issues made by the evidence. The only question involved, under the pleadings and evidence, was whether or not the policy was in force at the time the accident occurred. The court, by its judgment, specifically declared the policy to have been in full force and effect. That being the single issue involved, the judgment is sufficient. Dyas v. Dyas, Mo.App., 165 S.W.2d 317.
The judgment should be affirmed.
BOUR, C., concurs.
PER CURIAM.
The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.