PHOENIX ASSURANCE COMPANY OF
NEW YORK, a corporation, Plaintiff,

v.

HARRY HARLESS COMPANY, Inc.,
a corporation, et al., Defendants.

Civ. A. No. 67–710.

United States District Court
N. D. Alabama, S. D.

Jan. 15, 1969.

Herbert W. Peterson, of Rives, Peterson, Pettus & Conway, Birmingham, Ala., for plaintiff.

Paul G. Smith, of Huie, Fernambucq & Stewart, C. William Gladden, Jr., of Mead, Norman & Fitzpatrick, and Joe R. Wallace, Birmingham, Ala., for defendants.

### ORDER ON MOTION FOR JUDGMENT N. O. V. AND ON MOTION FOR NEW TRIAL

GROOMS, District Judge.

This matter is before the Court on plaintiff's motion for a new trial and for judgment notwithstanding the verdict.

The complaint herein is one for a declaratory judgment wherein plaintiff, as an insurer of the defendant Harry Harless Company, Inc., seeks a declaration that it is without obligation to defend Civil Action No. 67–600 pending in this Court or to pay any judgment which might be rendered therein against said defendant. A declaration is also sought as to the insurer's obligation to defend

and to pay any and all claims of any of the other defendants against said Harry Harless Company, Inc. under the terms of its policy No. L 01–06–64.

Plaintiff has asserted a non-compliance by the insured of a condition precedent respecting its liability under its policy.

Condition 5 of said policy provides in material part as follows:

"No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy."

Condition 4(a) of the policy provides:

"*In the event of an occurrence,* written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents *as soon as practicable* \* \* \*." (Emphasis supplied.)

An "occurrence" is defined in the policy as follows:

"*'Occurrence'* means an accident, including injurious exposure to conditions which results, during the policy period, in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured.*"

■■ As distinguished from the general burden of proof on the case as a whole, the burden was on the insured to establish a compliance with the provision respecting the giving of notice of an occurrence "as soon as practicable," or in the alternative to show a valid reason for not giving such notice as soon as practicable. Preferred Accident Insurance Company of New York v. Grasso, 2 Cir., 186 F.2d 987, 23 A.L.R.2d 1234; M. F. A. Mutual Insurance Company v. Quinn, 259 S.W.2d 854 (Mo.App.); Standard Accident Insurance Company v. Gore, 99 N.H. 277, 109 A.2d 566; and American Fidelity Company v. Hotel Poultney, 118 Vt. 136, 102 A.2d 322.[1]

Construing the evidence most favorably to the insured, did the evidence support the finding of the jury?

The Harry Harless Company, Inc. has for many years been engaged in the sale and distribution of fire and safety protection equipment. Harry Harless is president of the insured and has been for many years. As a part of the Company's operations it services and recharges fire extinguishers. One man, Owen Rinehart, performs these particular operations. The insured keeps a card file on its customers for whom such services are rendered. Once a year it checks each extinguisher and recharges same. In January 1967, the insured took over the servicing of fire extinguishers for the Alemite Corporation. The fire involved occurred on the premises of that Corporation on March 16, 1967.

While in his office listening to a news broadcast on the radio, Mr. Harless heard a report of the fire. He read the two accounts of the fire the next day. Extracts from Mr. Harless's testimony are set out in the footnote.[1a]

---

1. The insurer is not required to show that it was prejudiced by failure to give notice. American Fire and Casualty Co. v. Tankersley, 270 Ala. 126, 116 So.2d 579.

1a. "Q Did you, on any occasion after March 16, 1967, become apprised or receive some knowledge about any contention by anyone that some fire extinguishers in The Alemite Corporation did not work properly on the occasion of that fire?

  A \* \* \* Yes, sir.

  Q I say from whom did you first hear of that contention?

  A Captain Berry.

  Q Is that Captain W. E. Berry of the Birmingham Fire Department?

  A Yes, sir.

  Q Was this in a conversation with Captain Berry that you heard this?

  A It was in a casual conversation.

  Q Whether casual or not, was it in a conversation?

  A Yes, sir.

  Q And where did that conversation occur, please sir?

  A Out at the fire station at the back of the Fair Grounds, I think it is

In Young v. Travelers Ins. Co., 5 Cir., 119 F.2d 877, it was held that a subjective test should not be applied as to the insured's duty to give notice "as

No. 22. We had a display of a new type of light that was to light up a whole block at a fire, and it was after dark, and we had to display it out there, and after this we went into the kitchen at the fire station at the Fair Grounds.

Q And you knew or did prior to March and after March 16, 1967, that Captain W. E. Berry was a fire marshal for the City of Birmingham whose duty it was to investigate fire and the cause of fires, did you not?

A Yes, sir.

Q You say that is the first time anything had been brought to your attention or knowledge that someone claimed a fire extinguisher did not function properly at this fire?

A Yes, sir.

Q And you received that knowledge in a conversation with Captain Berry?

A He asked about my brother.

Q You received that knowledge in a conversation with Captain Berry?

A Yes, sir.

Q When, in your best recollection, did that conversation with Captain Berry occur?

A That night in the kitchen.

Q I understand, but what date or how long after the fire, in your best judgment?

A Some two or three weeks.

Q Could it have been on March 27, 1967?

A Yes, sir.

Q Some 11 days after the fire?

A Some time.

Q It could have been?

A Yes, sir, could have been.

Q He did then, regardless of that fact, he did tell you on that occasion someone had said that the fire extinguisher in The Alemite Corporation did not work properly; he did tell you that?

A * * * He said somebody claimed it did not work right.

Q I will ask you, to refresh your recollection, if he didn't tell you that after you had checked your records to call him and give him the name of the person who re-charged the extinguisher at The Alemite Corporation and the date they were recharged?

A * * * I might have said I will check the records and call you, but he didn't ask me.

Q Did you tell him on that occasion you would check your records and call him and give him the information?

A I could have.

Q You told Captain Berry you could call him and give him the information if you had done them?

A Yes.

Q Did he request you to check and see if you had done, and by done, I assume you mean re-charged the extinguisher?

A Yes.

Q Did you tell him you would call him and give it to him?

A Yes.

Q Did you do it on the following morning?

A I checked the records.

Q Is it your best recollection you did it on the morning following your conversation with Captain Berry?

A Yes, sir.

Q What did your records disclose, Mr. Harless?

A In checking the records, I asked if we had done the Alemite.

Q What do your records show?

A It showed yes.

Q What date did it show you had re-charged those extinguishers at The Alemite Company?

A Sometime in January.

Q Of what year?

A Of 1967.

Q You determined then on the day following your conversation with Captain Berry, your company had re-charged the extinguishers at The Alemite Company of Alabama?

A Yes, sir.

Q What did you do when you determined that, please, sir?

A I put in a call for Captain Berry. He wasn't in.

Q Did you leave your number?

A No, sir.

Q Did you ever call Captain Berry again?

A I called him possibly one more time, but he was still out.

Q Did you ever call him again?

A No, sir.

Q I will ask you if it isn't a fact on or about that time when you found out your records showed that your company had re-charged those extinguishers for The Alemite Com-

soon as practicable," so as to excuse the insured from reporting on the ground that he was not at fault and no claim would be made against him. "[T]he duty of giving notice is not measured in terms of good faith." *Id.*

In Dunn v. Travelers Indemnity Co., 5 Cir., 123 F.2d 710, it was held that where the insured interviewed three or four eyewitnesses, but not the claimant, his failure to extend the investigation to include claimant "rendered the inquiry made so incomplete that no decision based on it could be acceptable to the reasonable and prudent man." The failure to give notice was held to have breached the policy.

In Yorkshire Indemnity Company of New York v. Roosth & Genecov Production Co., 5 Cir., 252 F.2d 650, Judge Brown, speaking for the Court, and noting that the incident was not trivial "in occurrence, injury, or in legal theory of liability," stated:

"[T]o protect the Insurer's rightful interest, the Assured's investigation must comprehend the likelihood both of claims and liability. If a claim will be made or, whether made or not, if there is a reasonable probability of liability, then the notice must be given."

*   *   *   *   *   *

"If a full, adequate and fair investigation would indicate a reasonable likelihood of legal liability, the Assured who fails to report it on the mistaken, even though reasonable, belief, that the claimant will not assert a claim, must bear the consequences. To escape them, he must establish the contrary."

██ There was involved here a fire of consequence. It was not a trivial incident. Its spread was attributed to the failure of a fire extinguisher, or fire extinguishers. The insured's president was so advised. Such fire extinguisher, or extinguishers, were found upon inquiry by the insured's president to have been serviced by insured. Information to that effect was attempted to be made to the fire department, but then the whole matter was put on the shelf for some 108 days.[2] An investigation would certainly have revealed the claims made the basis of the suits and claims now asserted against the insured. The insured could only at its peril ignore the information that came to it on March 27, 1967, that which it ascertained by a check of its records, and from the interview with Owen Rinehart, who had serviced the extinguishers at Alemite.

"[I]f it appears that the giving of the notice has been delayed longer than was reasonably required physically to give the notice, then the material question would be whether that delay has caused prejudice. Here, speaking in terms of physical time, the notice could reasonably have been given sooner than it was. And, if it had been made to appear that prejudice resulted from the delay plaintiff's case would have been made out. * * *

"The delay here viewed merely from the time standpoint was more than was reasonably necessary but it was in no sense excessive or gross. In its nature it was one to which the doctrine of prejudice vel non has peculiar application. There was no prejudice."

As observed in footnote 1, the issue of prejudice is immaterial under the Alabama law.

pany, if you did not talk with your employee, Mr. Rinehart, who had re-charged them for your company? A  Yes, sir."

2. In *Dunn, supra,* the insured first notified the insurer 107 days after the accident, as to which he denied knowledge of involvement. The trial court held that he should have given notice sooner and that the insurer was prejudiced thereby. The appellate court disagreed with the District Court as to the prejudice and in the course of the opinion as to the timeliness of the notice said:

"We therefore reject as without merit, appellant's contention; that the facts surrounding the accident and known to Young were not sufficient to put him upon the duty of giving notice; that that duty arose only when he was actually claimed against by Brand's attorney;

*   *   *   *   *

Under the facts here presented in the light of the authorities referred to, the Court concludes that it should have directed a verdict for the plaintiff. The Court having reserved a ruling at the trial upon plaintiff's motion to that end, plaintiff's motion for judgment notwithstanding the verdict will be granted, and a judgment will be entered for the plaintiff declaring that it is without obligation to defend Civil Action No. 67–600, or to pay any judgment therein, or to defend or to pay any other claim on its policy No. L 01–06–64 arising out of the fire that occurred on March 16, 1967.

Plaintiff's motion for new trial will be overruled.