LOCAL ACCEPTANCE COMPANY,
Plaintiff-Appellant,

v.

David E. KINKADE and Bonnie Kinkade,
Defendants-Respondents,

v.

Ted LAIS, d/b/a Melody Sewing Center,
Defendant-Respondent.

No. 7994.

Springfield Court of Appeals.

Missouri.

Dec. 29, 1961.

Douglas & Douglas, Neosho, for appellant.

Johnson, Johnson & Landis, Neosho, for respondents.

McDOWELL, Judge.

This is an action for balance of $285.00 due on a promissory note, dated January 13, 1959, in the original sum of $360.00, payable in 24 equal monthly instalments of $15.00 each, executed by the defendants, David E. Kinkade and Bonnie Kinkade, payable to the order of "Mortgagee or holder hereof", and indorsed: "WITH RECOURSE TO Local Accept. Co., "Dealer Melody Sewing Center. Address Joplin, Mo.
Ted Lais."

Defendants, David E. Kinkade and Bonnie Kinkade, filed answer denying that plaintiff is a holder in due course of the note sued on.

Second—that the note and chattel mortgage sued on is not the entire contract entered into between defendants and third party defendant (seller) acting for himself and for plaintiff herein; that the promissory note and mortgage were executed concurrently with an additional agreement whereby third party defendant and plaintiff agreed that if these defendants purchased a sewing machine, to be paid for in monthly instalments of $15.00 each, they would be furnished pre-cut materials to be sewn on said sewing machine and would be paid $15.00 per month for 60 garments so sewn; that for several months such garments were furnished according to the agreement but thereafter neither the third party defendant nor plaintiff delivered additional material to the defendants to be sewn and thus the contract was breached.

Third—that the plaintiff, Local Acceptance Company, knew that Ted Lais was making the agreement concerning the sewing with defendants when it received said promissory note and chattel mortgage and that to such extent Ted Lais was acting as agent for plaintiff.

Fourth—that no payments are due on the note sued on.

Defendants filed a third party petition against Ted Lais, d/b/a Melody Sewing Center alleging that if defendants were liable to plaintiff, third party defendant was, in turn, liable to the defendants.

Plaintiff filed reply to answer of defendants denying allegations of new matter contained therein.

Ted Lais, third party defendant, filed answer to defendants' petition denying the allegations therein.

The cause was submitted to a jury resulting in a verdict and judgment for defendants. Plaintiff appealed. (Unless otherwise indicated all statutory references are to RSMo 1959, V.A.M.S.)

Plaintiff, Local Acceptance Company, is a Missouri corporation with a branch office in Joplin, Missouri. Bob Rapp testified that he had been employed by Local Acceptance Company and Local Finance Company for nine years and had been in charge of the Joplin branch of the Local Acceptance Company for almost five years. The note sued on (in evidence as plaintiff's exhibit 1) was purchased from the Melody Sewing Center and endorsed by Ted Lais on January 15, 1959. The transaction was handled by Mr. Rapp for the company who testified he paid Lais $209.00 immediately, put $60.00 in a reserve fund for him and discounted the note $90.00 and $1.00 for credit investigation. Witness stated that the makers of the note admitted they signed it; that at the time of the purchase there were no payments due; that the company had no notice of any defects and purchased it in the regular course of business, in good faith.

Some three or four years prior to the execution of the note and chattel mortgage by the defendants for the purchase of a sewing machine, Keith Wilkerson, d/b/a Keith's Sewing Center, instituted a plan for selling sewing machines for $360.00 each on the instalment plan, which involved entering into a sewing agreement with the purchaser whereby the seller obligated himself to pay to the purchaser $15.00 per month for sewing garments so the purchaser could meet instalments due on the note.

The evidence is that Mr. Rapp, manager of the Local Acceptance Company, had this plan of selling the machines explained to him and thought it was a good idea. Plaintiff handled the notes received for machines sold by Mr. Wilkerson until Wilkerson sold the business to one of his salesmen, Ted Lais, who continued the business under the name "Melody Sewing Center."

Lais testified that, prior to the giving of the note and chattel mortgage in question, he asked Mr. Rapp if he would handle the

paper for him the same as he had done for Wilkerson and that Rapp stated he would have to see his District Supervisor about the matter, and, later, told Lais he would handle the business. Lais testified that these sales were to be made on the "Sew Plan" by which the "customer would sew the garments to earn the money to make the payments on the machine". He testified that Rapp agreed to the plan; that he was without funds to carry on the business unless the Local Acceptance Company handled the paper. Lais testified that Rapp repeatedly asked about the outlet for the garments, prior to the time he sold any machines on his own account.

Lais called on defendants, Kinkades, in their home and had with him the sewing machine in question. In making the sale he used the note and chattel mortgage form furnished him by plaintiff, and, at time of sale, filled in the handwritten portion thereof. He testified that the sale to Kinkades was made on the strength of the representation by him, as contained in the written agreement made at the time and signed by Mrs. Kinkade and the Melody Sewing Center, whereby it was agreed that the Melody Sewing Center furnish garments to be sewn by the purchaser to meet the instalments due on the note and chattel mortgage. This agreement is in evidence as defendants' exhibit (A).

The evidence is that Ted Lais, d/b/a Melody Sewing Center, furnished materials to be sewn into garments by defendants according to the written agreement for the first five months and paid defendants $15.00 per month for such work. These payment checks were turned over to plaintiff and applied on the instalment note. The evidence is that Bonnie Kinkade finished sewing garments for the sixth month and returned them to the Melody Sewing Center. Lais could not pay in cash but gave her a receipt showing the work had been done; that thereafter, only 20 garments were furnished under the contract by Melody Sewing Center and the "Sew Contract" was breached.

Defendants admitted that they signed the note and chattel mortgage sued on but testified that at the time of signing the same Melody Sewing Center entered into the written agreement to pay $15.00 a month for sewing 60 garments so that the payments could pay the instalments on the note. Mrs. Kinkade testified that she had to go to the Melody Sewing Center in Joplin to get the garments and after she had completed sewing the same she took them back to the Melody Sewing Center.

Lais admitted that the business operated as the Melody Sewing Center was broke; that that was the reason he failed to furnish the pre-cut garments to defendants as agreed.

Defendants testified that they at all times were ready and willing to carry out their part of the "Sew Contract".

On cross examination, defendant-Bonnie Kinkade testified that at the time the promissory note and chattel mortgage and the "Sew Agreement" were signed, she understood she was buying a sewing machine to be paid for by sewing garments; that the machine described in the mortgage was delivered to her and that she has had possession of the same for the past 25 months and still has. She gave this testimony:

"Q. At the time that you purchased this sewing machine did Mr. Lais misrepresent anything to you? A. No, sir."

She testified that the "Sew Contract" was an agreement between Melody Sewing Center and herself. Her husband did not sign this contract. She admitted that plaintiff had made demand for payment of the note and that she refused such payment.

In our opinion we will refer to appellant as plaintiff and to respondents as defendants.

Under the first alleged error plaintiff complains of the action of the trial court in failing to direct a verdict for it at the close of all of the evidence, as against both

David E. Kinkade and Bonnie Kinkade, for the reason that under the evidence plaintiff met all of the requirements of being a holder in due course of the note sued on.

It is defendants' contention that under § 401.008 the note sued on is nonnegotiable because it is payable *to order* and the payee is not named or otherwise indicated therein with reasonable certainty.

■ Negotiability or nonnegotiability of securities must be determined by the provisions of the Negotiable Instruments Law and not by custom or usage. The law fixes the character and status of instruments regardless of form, intention or purpose to use. Lorimer v. McGreevy, 229 Mo.App. 940, 84 S.W.2d 667.

Section 401.001 provides:

"Form of negotiable instrument. An instrument to be negotiable must conform to the following requirements:

"(1) It must be in writing and signed by the maker or drawer;

"(2) Must contain an unconditional promise or order to pay a sum certain in money;

"(3) Must be payable on demand, or at a fixed or determinable future time;

"(4) Must be payable to order or to bearer; and

"(5) Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

Section 401.002. Certainty as to sum, what constitutes.—provides:

" * * * (2) By stated installments; or

"(3) By stated installments, with a provision that upon default in payment of any installment or of interest, the whole shall become due; or * * *."

Section 401.003. When promise is unconditional.—provides:

"1. An unqualified order or promise to pay is unconditional within the meaning of this chapter though coupled with; * * *

"(2) A statement of the transaction which gives rise to the instrument. * * *."

Section 401.008—When payable to order.—provides:

" * * * 2. Where the instrument is payable to order, the payee must be named or otherwise indicated therein with reasonable certainty."

Section 401.009. When payable to bearer.—The instrument is payable to bearer:

"(1) When it is expressed to be so payable; or

"(2) When it is payable to a person named therein or bearer; or

"(3) When it is payable to the order of a fictitious or nonexisting person or to a living person not intended or entitled to have any interest in it and such fact was known to the person making it so payable or was known to his employee or other agent who supplies or causes to be inserted the name of such payee; or

"(4) When the name of the payee does not purport to be the name of any person; or

"(5) When the only or last indorsement is an indorsement in blank."

Section 401.026. What constitutes holder for value.—"Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

Section 401.030. What constitutes negotiation. " * * * If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

Section 401.191.—Definitions and meaning of terms.

"* * * (4) *'Bearer'* means the person in possession of bill or note which is payable to bearer; * * *

"(7) *'Holder'* means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof;

"(8) *'Indorsement'* means an indorsement completed by delivery; * * *."

The instrument sued on herein is a combined note and chattel mortgage. The first part of the instrument is in the form of a note and the second part a chattel mortgage. The note is headed "Negotiable Promissory Note", is dated 1–13–59, and reads:

"For value received the undersigned, Mortgagor, promises to pay to the order of Mortgagee or holder hereof the TIME CONTRACT BAL-ANCE of $360.00 payable in *24* installments of *$15.00* on the *15* day of each succeeding month for a period of *24* months, beginning *Feb 24, 1959*, together with additional payments as follows ——— at the office of *Local Accept. Co.* located in the city of *Joplin, Mo.* with interest after maturity at the highest lawful rate, together with a reasonable cost of collection and attorney's fee if placed in the hands of an attorney for collection. All parties, including the makers and endorsers, waive presentment, protest and notice of protest in the event of nonpayment and agree to any renewal or extension of the time of payment after maturity without notice to them."

Then follows the description of the mortgaged property and, at the bottom of the first page, the instrument is signed.

"Witness   Ted Lais

"Purchaser
Mortgagor.   David E. Kinkade
"Purchaser
Mortgagor.   Bonnie Kinkade
"Address       Route # 2, Neosho, Mo."

On the back thereof appears the following indorsement:

"WITH RECOURSE TO   Local Accept Co.

"Dealer   Melody Sewing Center.   Address   Joplin, Mo.
                Ted Lais."

———◆———

Nowhere in the note or chattel mortgage does there appear the name of the mortgagee.

In Morgan v. Mulcahey, Mo.App., 298 S.W. 242, 244, the law is declared that where a single instrument combined note and chattel mortgage, each portion was to be construed as separate instruments and a provision appearing in the chattel mortgage and not in the note which would make the note nonnegotiable is not to be considered. It must appear in the note and provisions of the chattel mortgage cannot be read into the note to render it uncertain or convert it into a nonnegotiable instrument, it being otherwise negotiable.

Considering the note sued on in the light of the provisions of the Negotiable Instrument Act, § 401.001, we find, (1) that the note sued on is in writing and signed by the makers; (2) it contains an unconditional promise or order to pay a sum certain in money; (3) it is payable at a fixed or determinable future time.

The difficult question presented is: Is the note payable *to order* or *to bearer*? Section 401.009 of the Negotiable Instrument Act provides that the instrument is

payable *to bearer* when it is payable to a person named therein or bearer, or when it is payable to the order of a fictitious or nonexisting person and such fact was known to the person making it so payable.

In the instant case the note is made payable *to the order of Mortgagee or holder hereof*. Section 401.010 provides: "The instrument need not follow the language of this chapter, but any terms are sufficient which clearly indicate an intention to conform to the requirements hereof."

Webster's New International Dictionary, Second Edition, defines:

"*Bearer*—One who holds a check, note, draft, or other order for the payment of money; specif., the person in possession of a check payable to bearer, whether so drawn or having become so by being last endorsed in blank."

and "*Holder*—The person in possession of, and legally entitled to receive payment of, a bill, note, or check, that is, the payee or endorser in possession, or the bearer. A bona fide holder for value without notice is often called a *holder in due course*."

The law declared in 10 C.J.S. Bills and Notes § 123(a), page 573 is: "The general rule, as embodied in the Negotiable Instruments Act, is that an instrument is not negotiable unless made payable to a person or his 'order,' or to 'bearer,' or unless words of similar or equivalent legal import are used, such as 'assigns' or 'assignees,' or 'holder'."

Under § 123(b), page 575, the law is stated: " * * * Independently of statute, or without reference thereto, the words 'to bearer' may be sufficient to make an instrument payable to bearer, and 'holder' has been regarded as equivalent to 'bearer;' * * *."

In 7 Am.Jur., § 79, page 833, this law is stated: "When an instrument is payable to bearer, it is prescribed by the Uniform Act as follows: "The instrument is payable to bearer: (1) When it is expressed to be so

payable; or (2) when it is payable to a person named therein or bearer; or (3) when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable; or (4) when the name of the payee does not purport to be the name of any person; or (5) when the only or last indorsement is an indorsement in blank. It has been already stated that words equivalent in meaning to words of negotiability are permissible. Therefore, since 'holder' is a word of the same import as 'bearer', a promissory note payable to a particular person or 'holder' is negotiable the same as if the word 'bearer' had been used."

■ Under the law as set out in our opinion we find that the note sued on is a negotiable instrument under section 401.-001, being made payable to *holder* which is equivalent in meaning to the word *bearer*. We find against defendants on their theory that the note is nonnegotiable under the law as declared in section 401.008 of the Negotiable Instrument Act. Defendants urge that, under this section, because the note is payable to *order of mortgagee*, the payee must be named or otherwise indicated with reasonable certainty. They fail to consider that this note is payable to *the holder hereof*. The authority cited by defendants to sustain their contention herein, to-wit, Am.Jur., Vol. 7, pp. 835, 836, does not support their contention. The law stated therein is as follows:

" * * * Also, the rule is, with certain exceptions hereinafter mentioned, that in instruments for the payment of money, if no one is designated as payee, either by name or as bearer, the instrument is not a promissory note."

Under this rule of law we find that the instrument sued on is *payable to holder* which has an equivalent meaning *to bearer*. Defendants argue that the statute provides the note must be payable *to bearer* and that to meet the test as to negotiability only the word *bearer* is used and only that word in

a note will meet the statutory requirement. We find this contention erroneous.

Under section 401.010 it is provided: "The instrument need not follow the language of this chapter, but any terms are sufficient which clearly indicate an intention to conform to the requirements hereof."

■ Defendants further urge that even though the note sued on is not subject to their first criticism, plaintiff failed to make a case of being a holder in due course. They set out the requirements necessary to be a holder in due course as provided in section 401.052, that is: (1) That it is complete and regular upon its face; (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) That he took it in good faith and for value; and, (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

The note sued on was offered in evidence. Mr. Rapp testified that he was manager of plaintiff-company; that he handled the transaction of purchasing the note sued on; that it was purchased two days after the date thereof and he testified as to the value paid for said note. He testified that the note was not overdue and that his company took it without notice of any infirmities as to title and that it took it in good faith. We find from the record that there is no merit in this contention made by defendants.

Defendants cite authorities where holder of negotiable instruments, payable to order, is not a holder in due course where instrument does not show any indorsement from payee, and such holder takes subject to any equities existing between original parties. This law is declared in Metropolitan Discount Co. v. Lyman, Mo.App., 266 S.W. 489, and Fitzgibbon Discount Corporation v. Windisch, Mo.App., 271 S.W.2d 226, and the other authorities cited by defendants on the question of holder in due course.

We agree with this law but such law is not controlling where the instrument is payable to bearer or holder.

■ To constitute notice of an infirmity in the instrument or defect in the title of a person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such fact that his action in taking the instrument amounted to bad faith. Section 401.056; Local Finance Company v. Charlton, Mo.App., 289 S.W.2d 157.

In the instant case there is a complete lack of evidence as to any fraud connected with the sale of the sewing machine for which purchase price the promissory note in question was executed.

■ The answer of defendants raises two questions. First, it denies that plaintiff is a holder in due course, and, secondly, it alleges a breach of contract between seller and the defendants as to the manner of payment, which contract is a separate written instrument from the note and chattel mortgage. Defendant (wife) testified that there was no misrepresentation made to secure the sale and note but that, later, the seller went broke and failed to carry out his contract to furnish pre-cut garments according to his contract with defendants. There is no contention that there was any fraud practiced nor does the record disclose any evidence of fraud. Ted Lais' testimony does not establish any facts which would give actual knowledge to plaintiff of any infirmity, defect or knowledge of any such facts that its action in taking the instrument amounted to bad faith.

A holder in due course holds the instrument free from any defects of title of prior parties, and free from defenses available to prior parties among themselves and may inforce payment of the instrument for the full amount thereof against all parties liable thereon. Section 401.057 RSMo 1959, V.A.M.S.

Under our findings herein it is unnecessary to pass upon other alleged errors in plaintiff's brief. The cause is reversed and remanded with directions to enter a judgment for plaintiff and against defendants, Kinkades, in accordance with its motion for directed verdict at the close of all of the testimony. We further order that under the pleadings the court try the issue raised by defendants in their petition against third party defendant, Ted Lais, for breach of contract.

Reversed and remanded.

STONE, P. J., concurs.

RUARK, J., dissents.